## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| RAC INVESTMENT HOLDINGS, LLC, *et al.*,[1] | ) |
| Debtors. | ) Case No. 23-10316 (BLS) |
| | ) (Jointly Administered) |
| | ) |
| DAVID W. CARICKHOFF, solely in his capacity as Chapter 7 Trustee of RAC INVESTMENT HOLDINGS, LLC, *et al.*, | ) |
| Plaintiff, | ) Adv. Pro. No. 25-_____ (BLS) |
| v. | ) |
| TITLE TECHNOLOGIES, INC., | ) |
| Defendant. | ) |

### COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

David W. Carickhoff, solely in his capacity as the chapter 7 trustee (the "Trustee" or the "Plaintiff") for the estates of RAC Investment Holdings, *et al.* (collectively, the "Debtors"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover preferential and/or fraudulent transfers and to disallow any claims held by Title Technologies, Inc. (the "Defendant").  In support of this Complaint, Plaintiff alleges as follows:

---

[1]    The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: RAC Investment Holdings, LLC (7349); RAC King, LLC (6605); RAC Dealership, LLC (3862); RAC Intermediate Holdings, LLC (4792); RAC Servicer, LLC (3735); and RAC Asset Holdings, LLC (8701).

**NATURE OF THE CASE**

1.      Plaintiff seeks to avoid and recover from the Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential and/or fraudulent transfers of property that occurred during the ninety-day period prior to the commencement of the Debtors' bankruptcy cases, pursuant to sections 547, 548 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      In addition, the Plaintiff seeks to disallow, pursuant to section 502(d) of the Bankruptcy Code, any claim that the Defendant has filed or asserted against the Debtors' estates in the chapter 7 cases, notwithstanding whether any such claim previously has been subject to objection or allowed in full or in part by stipulation or prior order of the Court.  Plaintiff does not waive, but hereby reserves, all of his and the Debtors' rights to object to any such claim for any reason.

**JURISDICTION AND VENUE**

3.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.*

4.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter final orders with respect to the relief sought herein.

5.      Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a).

6.      Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trustee affirms his consent to the entry of final orders or judgments by the Bankruptcy Court if it is

determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

## THE PARTIES

8. Plaintiff is duly appointed Chapter 7 Trustee for the Debtors and the Debtors' estates.

9. Upon information and belief, Defendant is, and at all relevant times was, a vendor or creditor that provided goods and/or services to or for one or more of the Debtors prior to the Petition Date (as defined below).

10. Upon information and belief, Defendant has an address of 14850 Montfort Drive, Suite 180, Dallas, TX 75254.

## FACTUAL ALLEGATIONS

11. On March 14, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court, thereby commencing these chapter 7 bankruptcy cases (the "Chapter 7 Cases").

12. On the Petition Date, the Trustee was appointed as chapter 7 trustee of the Debtors' estates pursuant to section 701(a) of the Bankruptcy Code. Thereafter, a section 341(a) meeting of creditors was held and concluded.

13. On March 28, 2023, each of the Debtors filed their respective Schedules of Assets and Liabilities and Statements of Financial Affairs [ECF 31-36] (collectively, the "Schedules and Statements").

14.     On March 17, 2023, the Court entered an order providing for the joint administration of the Debtors' cases for procedural purposes only, with Case No. 23-10316 (BLS) designated as the lead case [ECF 14].  The Debtors are "affiliates" of each other, as such term is defined in section 101 of the Bankruptcy Code.

15.     Prior to the Petition Date, the Debtors operated a vehicle dealership business mostly leasing used cars under the name "American Car Center" (the "Dealership Business").  At its peak, the Dealership Business maintained 68 dealerships located in 10 states in the southeastern United States.  The Debtors reduced the number of active dealerships and were operating 45 dealerships prior to ceasing business and terminating all employees on February 24, 2023.

16.     Upon information and belief, each Debtor was insolvent during the one-year period prior to the Petition Date.  As with other retail-oriented businesses, the Debtors faced significant liquidity challenges upon the onset of the COVID-19 pandemic and through the Petition Date.  The pandemic caused the temporary shutdown of the Debtors' dealerships, and from the end of 2020 through the middle of 2022, the average price of used cars increased by 60%.  While the Debtors upfront cost to purchase used vehicles increased, the Debtors were unable to fully pass these costs increases to customers.  In October 2022, the Debtors restructured certain of their secured credit facilities.  These efforts, however, were ultimately not enough, and the Debtors continued to struggle with liquidity as more customers began falling behind on their payments and otherwise defaulting on their lease obligations.

17.     Unable to obtain additional financing, the Debtors determined to shut down operations in February 2023.

## PRE-PETITION DATE TRANSFERS

18.     During the ninety days before the Petition Date, that is between December 14, 2022

and the Petition Date (the "<u>Preference Period</u>"), the Debtors continued to operate their business and made certain transfers of money to, among others, vendors and service providers.

19.     Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements for the purchase of goods and/or services by one or more of the Debtors from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications and other documents (collectively, the "<u>Agreements</u>").

20.     During the Preference Period, one or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of the Defendant through payments and other credits aggregating not less than the amount set forth on <u>Exhibit A</u> hereto and those additional transfers as reflected on the Schedules and Statements, which are incorporated herein by reference (each a "<u>Transfer</u>" and collectively, "<u>Transfers</u>").  The details of each Transfer are set forth on <u>Exhibit A</u> attached hereto and the Schedules and Statements and incorporated by reference.

21.     Unless otherwise noted on <u>Exhibit A</u> or herein, each of the Transfers was made from an account in the name of Debtor, RAC Dealership, LLC, held at Regions Bank, account number ending in 8601.

22.     Plaintiff is seeking to avoid all of the Transfers and any other unknown transfers of interests of the Debtors' property made by the Debtors to the Defendant within the Preference Period.

23.     Prior to Plaintiff filing this Complaint, Plaintiff performed his own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant.  As part of that due diligence and where reasonably available, Plaintiff or his professionals reviewed the Debtors' books and records in his possession applicable to the Defendant.  Plaintiff also reviewed, *inter alia*, the Debtors' Schedules and Statements and any proofs of claim filed by Defendant.

24.     In February 2025, Plaintiff, through counsel, sent a demand letter to Defendant seeking a return of the Transfers and requesting that Defendant respond and provide support for any defenses to avoidance of the Transfers.  Plaintiff and his advisors reviewed all material provided in response, if any, as well as any other reasonably available information.

25.     After review of the information provided by Defendant, if any, and after conducting his own due diligence evaluation of reasonably knowable affirmative defenses to avoidance of the Transfers, Plaintiff has determined that he may avoid the Transfers, or a portion thereof, even after consideration of any statutory defenses available under section 547(c) the Bankruptcy Code.

26.     Pursuant to section 547(g), Defendant bears the ultimate burden of proof on any affirmative defense to the Transfers.  Plaintiff does not concede the validity of any defense, reserves all rights in connection therewith and leaves Defendant to its burden.

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Avoidance of Preference Period Transfers − 11 U.S.C. § 547)

27.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

28.     During the Preference Period, one or more of the Debtors made Transfers to or for the benefit of the Defendant in an aggregate amount not less than the amount set forth on Exhibit A hereto.

29.     Each Transfer was made from one or more of the Debtors, and constituted transfers of an interest in property of the Debtors.

30.     The Defendant was a creditor of the Debtors at the time of each Transfer by virtue of supplying goods and/or services, as described herein and in the Agreements, for which the Debtors were obligated to pay in accordance with the Agreements.

31.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C.

§ 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by one or more of the Debtors to the Defendant.

32.     Each Transfer was made for, or on account of, an antecedent debt owed by the applicable Debtor to the Defendant before the Transfer was made.

33.     Each Transfer was made while the transferring Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

34.     Each Transfer was made during the Preference Period. *See* Exhibit A.

35.     As a result of each Transfer, the Defendant received more than the Defendant would have received (i) through these Chapter 7 Cases; (ii) if the Transfers had not been made; and (iii) if the Defendant received payments on account of such debt under the provisions of the Bankruptcy Code.

36.     In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

**Second Claim for Relief**
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

37.     Plaintiff repeats each and every allegation previously set forth in this Complaint as if fully set forth herein.

38.     To the extent that one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was an advance or prepayment for goods and/or services, which were never provided or which the value of such goods and/or services did not constitute reasonably equivalent value in exchange for such Transfer(s), and/or was a debt incurred by an entity other than the paying Debtor but paid for by another Debtor, Plaintiff pleads in the alternative that the Debtor making such Transfer did not receive reasonably equivalent value in

exchange for such Transfer; and the Debtor making such Transfer: (a) was insolvent as of the date of the Transfer, or became insolvent as a result of the Transfer; (b) was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or (c) intended to incur, or believed they would incur, debts beyond its ability to pay upon maturity.

39.     Based on the foregoing, the Transfers constitute constructive fraudulent transfers, which are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

### Third Claim for Relief
### (Recovery of Avoided Transfers − 11 U.S.C. § 550)

40.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

41.     Plaintiff is entitled to avoid the Transfers pursuant to 11 U.S.C. §§ 547(b) and/or 548(a)(1)(B), as applicable.

42.     The Defendant was the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfers were made.

43.     Pursuant to 11 U.S.C.§ 550(a), the Plaintiff is entitled to recover from the Defendant the full amount of each Transfer, as set forth in Exhibit A, plus interest thereon to the date of payment and the costs of this action.

### Fourth Claim for Relief
### (Disallowance of all Claims − 11 U.S.C. § 502(d))

44.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

45.     The Defendant is a transferee of the Transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

46.    The Defendant has not paid the amount of the Transfers, or turned over such property, for which the Defendant is liable under 11 U.S.C. § 550.

47.    Pursuant to sections 502(d) and (j) of the Bankruptcy Code, and irrespective of whether any order or stipulation allowing Defendant's claim has been approved by the Bankruptcy Court, any and all claims of the Defendant and/or its assignee, against the Debtors' estates in their chapter 7 cases must be disallowed until such time as the Defendant pays to the Plaintiff an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

## RESERVATION OF RIGHTS

48.    During the course of this proceeding, Plaintiff may learn through discovery or otherwise of additional transfers made to the Defendant during the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code.  It is Plaintiff's intention to avoid and recover all avoidable transfers of property made by the Debtors to or for the benefit of the Defendant or any other transferee.  Plaintiff reserves the right to amend this original Complaint to include, without limitations: (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of and/or revisions to the Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against the Defendant as follows:

A.    Avoiding the Transfers pursuant to 11 U.S.C. §§ 547(b) and/or 548(a)(1)(B);

B.    Allowing the recovery of the monetary value of the Transfers, plus interest pursuant

to 11 U.S.C. § 550(a);

C.      Disallowing any claims held by the Defendant against the Debtors' estates until the

Defendant returns the Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j);

D.      Awarding Plaintiff interest from the date of the Complaint;

E.      Awarding Plaintiff the fees and costs of suit incurred herein; and

F.      Such other and further relief as this Court may deem just and proper.

Dated: March 13, 2025                    By:      /s/ Natasha M. Songonuga
       Wilmington, Delaware                       Natasha M. Songonuga (Bar No. 5391)
                                                  ARCHER & GREINER, P.C.
                                                  300 Delaware Avenue, Suite 1100
                                                  Wilmington, DE 19801
                                                  Tel: (302) 777-4350
                                                  Email: nsongonuga@archerlaw.com

                                                  Gerard DiConza
                                                  ARCHER & GREINER, P.C.
                                                  1211 Avenue of the Americas
                                                  New York, NY 10036
                                                  Tel: (212) 682-4940
                                                  Email: gdiconza@archerlaw.com

                                                  Patrick A. Afriye
                                                  ARCHER & GREINER P.C.
                                                  1025 Laurel Oak Road
                                                  Voorhees, NJ 08043
                                                  Tel: (856) 673-7153
                                                  Email:  pafriyie@archerlaw.com

                                                  *Attorneys for David W. Carickhoff, solely in*
                                                  *his capacity as the Chapter 7 Trustee and*
                                                  *Plaintiff*

**EXHIBIT A**

**RAC INVESTMENT HOLDINGS, LLC** *et al* **., Ch. 7 Case No. 23-10316**

**RAC DEALERSHIP d/b/a AMERICAN CAR CENTER**

**SCHEDULE OF TRANSFERS**

| TITLE TECHNOLOGIES | | |
| --- | --- | --- |
| *Preferential Transfers:* | | |
| Payment # | Payment Date | Payment Amount |
| Acct #8601 | 12/14/2022 | 5,146.58 |
| Acct #8601 | 12/14/2022 | 5,247.10 |
| Acct #8601 | 12/20/2022 | 4,299.31 |
| Acct #8601 | 12/20/2022 | 9,328.67 |
| Acct #8601 | 12/21/2022 | 6,008.14 |
| Acct #8601 | 12/22/2022 | 4,086.25 |
| Acct #8601 | 12/22/2022 | 4,966.89 |
| Acct #8601 | 12/23/2022 | 4,426.77 |
| Acct #8601 | 12/23/2022 | 6,318.25 |
| Acct #8601 | 01/05/2023 | 4,033.31 |
| Acct #8601 | 01/05/2023 | 4,276.37 |
| Acct #8601 | 01/05/2023 | 5,085.24 |
| Acct #8601 | 01/06/2023 | 6,294.99 |
| Acct #8601 | 01/06/2023 | 9,133.60 |
| Acct #8601 | 01/13/2023 | 2,762.53 |
| Acct #8601 | 01/13/2023 | 2,876.31 |
| Acct #8601 | 01/13/2023 | 7,223.62 |
| Acct #8601 | 01/17/2023 | 3,843.04 |
| Acct #8601 | 01/17/2023 | 3,994.94 |
| Acct #8601 | 01/17/2023 | 4,852.02 |
| Acct #8601 | 01/17/2023 | 11,347.67 |
| Acct #8601 | 01/18/2023 | 5,378.95 |
| Acct #8601 | 01/19/2023 | 4,766.42 |
| Acct #8601 | 01/23/2023 | 6,462.41 |
| Acct #8601 | 01/26/2023 | 9,246.76 |
| Acct #8601 | 01/27/2023 | 2,706.70 |
| Acct #8601 | 01/27/2023 | 5,429.07 |
| Acct #8601 | 01/30/2023 | 6,431.44 |
| Acct #8601 | 02/01/2023 | 5,257.44 |
| Acct #8601 | 02/07/2023 | 1,332.33 |
| Acct #8601 | 02/07/2023 | 3,953.62 |
| Acct #8601 | 02/13/2023 | 5,019.80 |
| Acct #8601 | 02/13/2023 | 6,597.87 |
| Acct #8601 | 02/14/2023 | 15,737.40 |
| Acct #8601 | 02/14/2023 | 2,739.57 |
| Acct #8601 | 02/15/2023 | 2,258.39 |
| Acct #8601 | 02/15/2023 | 2,498.20 |

**EXHIBIT A**

**RAC INVESTMENT HOLDINGS, LLC** *et al* **., Ch. 7 Case No. 23-10316**

**RAC DEALERSHIP d/b/a AMERICAN CAR CENTER**

**SCHEDULE OF TRANSFERS**

| TITLE TECHNOLOGIES | | |
|---|---|---|
| *Preferential Transfers:* | | |
| **Payment #** | **Payment Date** | **Payment Amount** |
| Acct #8601 | 02/15/2023 | 5,252.90 |
| Acct #8601 | 02/15/2023 | 6,587.82 |
| Acct #8601 | 02/15/2023 | 11,754.28 |
| Acct #8601 | 02/16/2023 | 1,332.33 |
| Acct #8601 | 02/16/2023 | 3,304.52 |
| Acct #8601 | 02/16/2023 | 3,379.76 |
| Acct #8601 | 02/16/2023 | 4,823.91 |
| Acct #8601 | 02/16/2023 | 4,862.49 |
| Acct #8601 | 02/16/2023 | 9,284.81 |
| Acct #8601 | 02/17/2023 | 4,957.74 |
| Acct #8601 | 02/17/2023 | 5,267.16 |
| Acct #8601 | 02/17/2023 | 7,692.54 |
| Acct #8601 | 02/21/2023 | 2,501.13 |
| Acct #8601 | 02/22/2023 | 1,526.69 |
| Acct #8601 | 02/22/2023 | 1,930.89 |
| Acct #8601 | 02/22/2023 | 2,490.59 |
| Acct #8601 | 02/22/2023 | 3,503.47 |
| Acct #8601 | 02/22/2023 | 3,961.20 |
| Acct #8601 | 02/22/2023 | 4,506.45 |
| Acct #8601 | 02/22/2023 | 5,043.93 |
| Acct #8601 | 02/22/2023 | 5,943.54 |
| Acct #8601 | 02/23/2023 | 1,259.35 |
| Acct #8601 | 02/23/2023 | 1,289.07 |
| Acct #8601 | 02/23/2023 | 1,306.30 |
| Acct #8601 | 02/23/2023 | 2,895.11 |
| Acct #8601 | 02/23/2023 | 3,684.27 |
| Acct #8601 | 02/23/2023 | 3,997.01 |
| Acct #8601 | 02/23/2023 | 12,161.25 |
| Acct #8601 | 02/24/2023 | 1,262.72 |
| Acct #8601 | 02/24/2023 | 1,276.10 |
| Acct #8601 | 02/24/2023 | 1,361.57 |
| Acct #8601 | 02/24/2023 | 1,385.06 |
| Acct #8601 | 02/24/2023 | 1,428.72 |
| Acct #8601 | 02/24/2023 | 1,475.98 |
| Acct #8601 | 02/24/2023 | 2,258.38 |
| Acct #8601 | 02/24/2023 | 2,674.00 |
| Acct #8601 | 02/24/2023 | 6,436.39 |

**EXHIBIT A**

**RAC INVESTMENT HOLDINGS, LLC** *et al* **., Ch. 7 Case No. 23-10316**

**RAC DEALERSHIP d/b/a AMERICAN CAR CENTER**

**SCHEDULE OF TRANSFERS**

| TITLE TECHNOLOGIES | | |
|---|---|---|
| *Preferential Transfers:* | | |
| **Payment #** | **Payment Date** | **Payment Amount** |
| Acct #8601 | 02/24/2023 | 6,626.22 |
| Acct #8601 | 02/27/2023 | 1,023.18 |
| Acct #8601 | 02/27/2023 | 1,024.40 |
| Acct #8601 | 02/27/2023 | 2,183.63 |
| Acct #8601 | 02/27/2023 | 2,425.99 |
| Acct #8601 | 02/27/2023 | 2,470.66 |
| Acct #8601 | 02/28/2023 | 1,036.65 |
| Acct #8601 | 02/28/2023 | 1,270.17 |
| Acct #8601 | 02/28/2023 | 1,391.97 |
| **TOTAL** | $ | 366,880.27 |