IN THE UNITED STATES DISTRICT COURT
BANKRUPTCY DIVISION, DELAWARE

RECEIVED

2025 MAR 19  AM 10: 47

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re: AMERICAN CAR CENTER
d/b/a RAC DEALERSHIP, LLC

CASE: 23-10316

_____/

## MOTION TO REOPEN BANKRUPTCY CASE DUE TO ENTITY NOT RELEASING AUTOMOTIVE TITLE FROM PURCHASE

COMES NOW, **JEFFREY R. HIRSCHKORN**; an interested party, and wherein petitions The United States Bankruptcy Court - Delaware Division - to reopen the bankruptcy case of AMERICAN CAR CENTER d/b/a RAC DEALERSHIP LLC for limited purposes. The interested party maintains that prior to engaging filing that all attempts to resolve the impasse with the bankruptcy trustee have gone without positive nature. That has gone on for about 18 months. As a result, the interested party now behooves the United States Bankruptcy Court for help.

For fact and consideration, the interested party facilitated a purchase and NOT a lease on the 21st day of February, 2023, a 2015 Chevy Trax from AMERICAN CAR CENTER in Longwood, Florida. And, at that time, a complete payment was made to them and validated proof exists on the attached credit card statement. The billing ID is listed as RAC. The documentation has been provided to both the local DMV and Courts, with the resulting outcome requiring an order

from the United States Bankruptcy Court declaring the car the property of the interested party thereof.

Following the purchase, the interested party was advised to contact the American Car Center within FIVE days to obtain final registration and titling documents. That never happened as the entity went out of business within a couple of days following the purchase. On the advice of the Florida DMV Regional Administrative Division for Seminole County (with offices in Deland, Florida), I contacted Westlake Financial as they became the servicer of accounts. And, of course, since the purchase was an actual sale, they have had no information.

The interested party has attempted a judicial process in Florida with a *Petition for Declaratory Judgment*, but the County Court maintains that it does NOT have ample jurisdiction due to the fact that the dealership is under the territory of this Court. Significant attempts to attempt RAC Dealership and related entity AF Title Company have been unsuccessful with the assistance of the Seminole County Sheriff (RAC) and the Shelby County Sheriff (AF). That included the original pleading and summons in the County Court matter. The interested party also sent out required *Notice of Actions* and then due to Fla. Rules of Civil Procedure, I posted them within the confines of *The Sanford Herald* and throughout the process the entities had ample time to reply and NO ONE replied.

For fact and validation, the interested party attaches the initial complaint, amended complaint and all Court documentation that was attempted to serve on the above companies and the corresponding rejection of service by governmental service agencies within the local sheriff. Not to mention the interested party is attached the documentation from the case which includes the Notice of Action and verification of publication in the above newspaper.

In addition, due to the bankruptcy filing, the interested party had to REPAY the local regulators to register and title the car. And, absent defined documentation, the Florida Department of Highway Safety and Motor Vehicles was instructed to allow those with PENDING DEALER TRANSACTION (which meant that ACC did not finish the tag and titling as they routinely used a third-party company) to have the DMV back out the plate and give paperwork authorizing the local tax collector to finish the process. The interested party had to pay the DMV fees that were already paid to ACC at the time of purchase.

Not to mention that the interested party has engaged all available assistance to get the matter resolved and the fact that Westlake Financial (d/b/a Westlake Portfolio) has no interest in my car, the lawyer for the firm could not help me either as he claimed that he does NOT have legal standing to issue any release of lien or change of title from AF Title (as the DMV recorded them as the owner or leasing company).

Thus, the Florida DMV Regional Complaint Unit in Deland, Florida and the examiner assigned to the ACC fiasco Allison Clark has advised that a Court order from the United States Bankruptcy Court is required to allow them to release the lien and convert the ownership of the vehicle to JEFFREY R. HIRSCHKORN from AF TITLE COMPANY. Again, the paperwork from ACC was sporadic at best and that is why legal counsel for the Florida DMV had all the cars with PENDING DEALER TRANSACTION registered in this manner.

Also, for identification purposes, the car is a 2015 Chevy Trax, bearing VIN # KL7CJLSB1FB065878 and the registration on the vehicle is valid until 01/27 as the interested party typically renews all tags/registration every two years as such proves to be a cheaper viaduct than doing it annually.

**WHEREFORE**, the undersigned interested party, hereby moves The United States Bankruptcy Court for an order that relinquishes the title from AF TITLE COMPANY (and also directs that the lien entered with AF on it be released) to the name of JEFFREY R. HIRSCHKORN as the interested party is the rightful owner considering that the purchase itself was NOT A LOAN or A LEASE, but due to paperwork not in order from the purchase taking place within days of the dealership going bankrupt, the Court here is requested to take judicial notice and issue an appropriate order thereof.

RECEIVED

2025 MAR 19  AM 10: 47

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

/s/ _____
JEFFREY R. HIRSCHKORN, *pro se*
5342 R D Avenue
Orlando, Florida 32822
(407) 267-1562
EMAIL: jhirschkorn37@icloud.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been placed into the hands of the United States Mail for mail on this 14th day of March, 2025; with a primary copy to The United States Bankruptcy Court, Delaware Division, 824 North Market Street, Suite 300, Wilmington, DE 19801 and a conformed filed copy with the Bankruptcy Trustee David W. Carickhoff, Esquire at Chipman Brown Cicero & Cole, 1313 North Market Street, Suite 5400, Wilmington, DE 19801.

/s/ _____
JEFFREY R. HIRSCHKORN, *pro se*

# IN THE COUNTY COURT OF THE 18TH JUDICIAL CIRCUIT
# IN AND FOR SEMINOLE COUNTY, FLORIDA

**JEFFREY R. HIRSCHKORN,**          **CASE:** 2024 CC 3591

   Plaintiff,


**RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC**
**AF TITLE COMPANY**
**FLA DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES,**
   Defendant(s)

_____/

## <u>AMENDED COMPLAINT</u>

COMES NOW, the Plaintiff, JEFFREY R. HIRSCHKORN; appearing *pro se*; and pursuant to order of the Court (and following hearing), hereby files this *Amended Complaint* pertaining to abandonment of the 2015 Chevy Trax bearing VIN KL7CJLSB1FB065878 which was left in the care and custody of the Plaintiff following an executed lease-to-own agreement between all parties. It is now known to the Court by non-action of service of all cases pleadings and the required publishing of multiple *Notice of Action* documents, that all involved parties except for the Plaintiff have abandoned any interest in the aforesaid vehicle.

The Plaintiff has used all reasonable efforts to locate the entities affiliated with the Defendant (except for the Florida Department of Highway Safety and Motor Vehicles as they are only listed for custodian of records) and despite all

substantial efforts, NO ONE from RAC Dealership LLC or AF Title Company have raised any position or opposition to the pleadings filed by the Plaintiff, to wit: now seeking the Court to declare the vehicle to be abandoned and with the Plaintiff being the last rightful holder of the 2015 Chevy Trax, jurisdiction is vested with the Court as the transaction giving rise to the matter happened within the confines of the 18th Judicial Circuit and thus, the Court, based on all case pleadings, service attempts and required published disclosures, shall declare the vehicle ABANDONED by the Defendants.

**WHEREFORE**, the Plaintiff now moves the Court to determine that the vehicle in question should be labeled as ABANDONED and with the Plaintiff being the last rightful holder of the car, the Court shall award possession of the 2015 Chevy Trax based on the information and records contained within the Court's filing. The Court should take notice that counsel for the FL DMV did specify in open Court (via Internet hook up), that viaduct of declaring the car to be ABANDONED would be the best route to determine that the vehicle itself should be awarded to the Plaintiff.

**/s/ Jeffrey R. Hirschkorn**
Jeffrey R. Hirschkorn, pro se
Post Office Box 1186
Orlando, Florida 32802
(407) 267-1562
EMAIL: jhirschkorn32822@yahoo.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing pleading was filed by utilizing The Florida E-Filing Portal on this 2nd day of December, 2024; with a primary copy furnished to the Clerk of the Circuit Court, Civil Division and a conformed filed copy to the last known addresses of RAC Dealership LLC DBA American Car Center and AF Title plus to the Florida Department of Highway Safety & Motor Vehicles, via service of the Florida E-Portal.

/s/ **Jeffrey R. Hirschkorn**
Jeffrey R. Hirschkorn, pro se

## IN THE COUNTY COURT OF THE 18TH JUDICIAL CIRCUIT
## IN AND FOR SEMINOLE COUNTY, FLORIDA

**JEFFREY R. HIRSCHKORN,**              **CASE:** 2024 CC 3591

  Plaintiff,

**RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC**
**AF TITLE COMPANY**
**FLA DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES,**

  Defendant(s)

_____/

### MOTION FOR CLERK'S DEFAULT

The Plaintiff, JEFFREY R. HIRSCHKORN; moves for an entry of default against the Defendant AF Title Company for failure to serve any paper on the undersigned or file any paper as required by law to the Complaint for Declaratory Judgment and Relief. The Fla. Department of Highway Safety and Motor Vehicles was listed on the suit for custodial records only.

**/s/ Jeffrey R. Hirschkorn**
Jeffrey R. Hirschkorn
Plaintiff

### DEFAULT

A default is entered in this action against the Defendants for failure to serve or file a response or any paper as required by law.

Dated: _____11/06/2024_____



Grant Maloy
CLERK OF THE CIRCUIT COURT  And Comptroller
/s/ Katherine Pope          59202ACC003591000SEM
11/06/2024 10:31:16 AM
By: 6f6331e9-6bf7-46ea-9650-cd78e085ec80
Deputy Clerk

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing pleading was filed by utilizing The Florida E-Filing Portal on this 4th day of November, 2024; with a primary copy furnished to the Clerk of the Circuit Court, Civil Division and a conformed filed copy to the last known address of AF Title.

/s/ **Jeffrey R. Hirschkorn**

Jeffrey R. Hirschkorn; *pro se*

Plaintiff

## IN THE COUNTY COURT OF THE 18TH JUDICIAL CIRCUIT
## IN AND FOR SEMINOLE COUNTY, FLORIDA

**JEFFREY R. HIRSCHKORN,**   **CASE:** 2024 CC 3591
    Plaintiff,

**RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC**
**AF TITLE COMPANY**
**FLA DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES,**
    Defendant(s)

_____/

## <u>MOTION FOR CLERK'S DEFAULT</u>

The Plaintiff, JEFFREY R. HIRSCHKORN; moves for an entry of default against the Defendants RAC Dealership LLC DBA American Car Center LLC for failure to serve any paper on the undersigned or file any paper as required by law to the Complaint for Declaratory Judgment and Relief. The Fla. Department of Highway Safety and Motor Vehicles was listed on the suit for custodial records only.

<u>**/s/ Jeffrey R. Hirschkorn**</u>
Jeffrey R. Hirschkorn
Plaintiff

## <u>DEFAULT</u>

A default is entered in this action against the Defendants for failure to serve or file a response or any paper as required by law.

Dated:    10/30/2024
_____



                            Grant Maloy

CLERK OF THE CIRCUIT COURT AND COMPTROLLER
/s/ Rosetta Adams      592024CC003591000SEM
By: 10/30/2024 11:32:57 AM
b18432f8-780e-418d-95e5-91ad03954fd6
Deputy Clerk

*** FILED: GRANT MALOY, CLERK OF CIRCUIT COURT SEMINOLE COUNTY, FL 10/30/2024 11:32:49 AM ***

**SANFORD HERALD**

## AFFIDAVIT OF PUBLICATION

State of Florida, County of Charlotte, ss:

Laquansay Nickson Watkins, being first duly sworn, deposes and says: That (s)he is a duly authorized signatory of Column Software, PBC, duly authorized agent of Sanford Herald, a twice weekly newspaper published by Sanford Herald, LLC at Sanford, in Seminole County, Florida, that the attached copy of the advertisement, Hirschkorn v RAF Dealership LLC (2) was published in said newspaper in the issues of
Sep. 8, 2024, Sep. 15, 2024, Sep. 22, 2024, Sep. 29, 2024

Affiant further says that said Sanford Herald is a newspaper published by Sanford Herald LLC at Sanford, in said Seminole County, Florida, and that the said newspaper has heretofore been continuously published in said Seminole County, Florida, twice weekly and has been entered as periodicals matter at the post office in Sanford, in said Seminole County, Florida, for a period of one year next preceding the first publication of the attached copy of advertisement; and affiant further says that he or she has neither paid nor promised any person, firm or corporation any discount, rebate, commission or refund for the purpose of securing this advertisement for publication in the said newspaper.

(Signed) Laquansay Nickson Watkins

**VERIFICATION**

State of Florida
County of Charlotte



RACHAEL MARY SCHULTZ
Notary Public - State of Florida
Commission # HH135673
Expires on May 27, 2025

Subscribed in my presence and sworn to before me on this: 09/30/2024

Rachael May Schultz

Notary Public
Notarized remotely online using communication technology via Proof.

IN THE COUNTY COURT OF THE 18TH JUDICIAL CIRCUIT

IN AND FOR SEMINOLE COUNTY, FLORIDA

JEFFREY R. HIRSCHKORN, PLAINTIFF

V.

RAC DEALERSHOP LLC DBA AMERICAN CAR CENTER LLC; AF TITLE COMPANY AND FLORIDA DHSMV.

DEFENDANTS

2024 CC 3591 - 0

NOTICE OF ACTION

TO: AF TITLE COMPANY, 6400 WINCHESTER ROAD, MEMPHIS, TN 38115

YOU ARE HEREBY NOTIFIED that an action for Declaratory Judgment has been filed against your company and you're required to serve a copy of your written defenses, if any, to the Plaintiff, JEFFREY R. HIRSCHKORN; whose address is Post Office Box 1186, Orlando, Florida 32802; on or before November 3, 2024 and file the original with the Clerk of the Circuit Court either before service on the Plaintiff or immediately thereafter; otherwise a default will be entered against you for the relief demanded in the complaint.

Dated: September 3, 2024

GRANT MALOY, Clerk of Court and Comptroller

By: Korey Bailey, Deputy Clerk

Publish: September 8, 15, 22, 29, 2024
LN 1451

SANFORD HERALD

## AFFIDAVIT OF PUBLICATION

State of Florida, County of Duval, ss:

Stefani Beard, being first duly sworn, deposes and says: That (s)he is a duly authorized signatory of Column Software, PBC, duly authorized agent of Sanford Herald, a twice weekly newspaper published by Sanford Herald, LLC at Sanford, in Seminole County, Florida, that the attached copy of the advertisement, Hirschkorn v RAC Dealership LLC was published in said newspaper in the issues of

Sep. 1, 2024, Sep. 8, 2024, Sep. 15, 2024, Sep. 22, 2024

Affiant further says that said Sanford Herald is a newspaper published by Sanford Herald LLC in said Seminole County, Florida, and that the said newspaper has heretofore been continuously published in said Seminole County, Florida, twice weekly and has been entered as periodicals matter at the post office in Sanford, in said Seminole County, Florida, for a period of one year next preceding the first publication of the attached copy of advertisement; and affiant further says that he or she has neither paid nor promised any person, firm or corporation any discount, rebate, commission or refund for the purpose of securing this advertisement for publication in the said newspaper.

(Signed) _Stefani Beard_

**VERIFICATION**

State of Florida
County of Duval

Subscribed in my presence and sworn to before me on this: 09/24/2024

_Destiny K. Jackson_

Notary Public
Notarized remotely online using communication technology via Proof.

DESTINY KESHAN JACKSON
Notary Public - State of Florida
Commission # HH471176
Expires on September 28, 2024

---

N THE COUNTY COURT OF THE 18TH JUDICIAL CIRCUIT

IN AND FOR SEMINOLE COUNTY, FLORIDA

JEFFREY R. HIRSCHKORN,
Plaintiff

v.

RAC DEALERSHP LLC DBA AMERICAN CAR CENTER LLC; AF TITLE COMPANY AND FLA DHSMV,
Defendant(s)

NOTICE OF ACTION

TO: RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC, 2300 US Highway 17-92, Longwood, Florida 32750

YOU ARE HEREBY NOTIFIED that an action for Declaratory Judgment has been filed against you and you are ordered to serve a copy of your written defenses, if any, to the Plaintiff, whose address is Post Office Box 1186, Orlando, Florida 32802 on or before the 28th day of October, 2024 and file the original with the Clerk of the Court either before service on the Plaintiff or immediately thereafter: otherwise a default will be entered against you for the relief demanded in the complaint.

DATED: August 27, 2024

Grant Maloy as Clerk of the Circuit Court and Comptroller

By: Kory G. Bailey, As Deputy Clerk

Publish: September 1, 8, 15, 22, 2024
LN1424

Hirschkorn v RAC Dealership LLC - Page 1 of 1

# IN THE COUNTY COURT OF THE 18TH JUDICIAL CIRCUIT
# IN AND FOR SEMINOLE COUNTY, FLORIDA

**JEFFREY R. HIRSCHKORN,**            CASE: 2024 CC _3591_ ~o

  Plaintiff,

**RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC**
**AF TITLE COMPANY**
**FLA DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES**

  Defendant(s)

_____/

## NOTICE OF ACTION

TO: AF Title Company, 6400 Winchester Road, Memphis, TN 38115

**YOU ARE NOTIFIED** that an action for Declaratory Judgment has been filed against your company and you're required to serve a copy of your written defenses, if any, to the Plaintiff, JEFFREY R. HIRSCHKORN; whose address is Post Office Box 1186, Orlando, Florida 32802; on or before _November 4, 2024_ and file the original with the Clerk of the Circuit Court either before service on the Plaintiff or immediately thereafter; otherwise a default will be entered against you for the relief demanded in this complaint.

Dated: _September 5, 2024_

        GRANT MALOY, Clerk of Court and Comptroller

        By: _Amanda Hoffman_
            Deputy Clerk of Court

IN THE COUNTY COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,

IN AND FOR SEMINOLE COUNTY, FLORIDA

_JEFFREY R. WESKORN_

Plaintiff(s)                                           CASE NO. _24CC 3591_

vs.

_RAC DEALERSHIP DBA AMER CAR CTR LLC_

And                        _& AF TITLE CO._

STATE OF FLORIDA

DEPARTMENT OF HIGHWAY SAFETY AND

MOTOR VEHICLES,

Defendant(s)

**NOTICE OF ACTION**

TO:                _2300 US HWY 17-92 , LONGWOOD, FL 32750_

Defendant(s): _RAC DEALERSHIP DBA AMERICAN CAR CTR LLC_

YOU ARE NOTIFIED that an action for Declaratory Judgment has been filed against you and you are
required to serve a copy of your written defenses, if any, to it on the Plaintiff(s), whose address is
_PO BOX 1186, ORL FL 32802_

on or before _OCT 28, 2024_ and file the original with the clerk of this court either before service on
the Plaintiff(s) or immediately thereafter; otherwise a default will be entered against you for the relief
demanded in the complaint.

DATED on: _AUGUST 27, 2024_

Grant Maloy

As Clerk of Circuit Court & Comptroller

By: _Kory G. Bailey_

As Deputy Clerk





## Corporate Card
## Statement of Account

**Sign-up For Online Statements**

www.americanexpress.com/checkyourbill

| Prepared For | Account Number | Closing Date | |
|---|---|---|---|
| JEFFREY R. HIRSCHKORN<br>GLOBAL MARKETING 2 LLC | XXXX-XXXXX1-92009 | 03/15/23 | Page 1 of 2 |

**Balance Please Pay By Due $ 03/31/23**

| Previous Balance $ | New Charges $ | Other Debits $ | Payments $ | Other Credits $ | |
|---|---|---|---|---|---|
| 2,076.94 | 23,020 | 0.00 | 2,076.94 | 0.00 | 540.82 For important information regarding your account refer to page 2. |

To manage your Account online or to pay your bill, please visit us at corp.americanexpress.com. For additional contact information, please see the reverse side of this page.

## Activity   Date reflects either transaction or posting date

### Card Number XXXX-XXXXX1-92009

| | | Reference Code | Amount $ |
|---|---|---|---|
| 01/29/23 | PAYMENT RECEIVED - THANK YOU      01/29 | 08006000000 | -2,076.94 |
| 02/21/23 | RAC FINANCIAL      AUTO DEALER            FL<br>REF#  F1UWJYBCOVN AUTO DEALER/ACC/LW  02/21/23 | | 23,020.00 |

| REF#  74275396105    800-860-6272      04/13/16 | | |
|---|---|---|

**Total for JEFFREY R. HIRSCHKORN**

New Charges/Other Debits     23,020.00
Payments/Other Credits        -2,076.94

---

↓ Please fold on the perforation below, detach and return with your payment ↓

Do not staple or use paper clips

**Payment Coupon**

| Account Number |
|---|
| XXXX-XXXXX1-92009 |

**Please Pay By 03/31/23**

Payable upon receipt in U.S. Dollars.

Enter 15 digit account number on all payments.

Checks or drafts must be drawn against banks located in the U.S.

Check here if address, telephone number, or e-mail address has changed. Note changes on reverse side.

JEFFREY R. HIRSCHKORN
GLOBAL     MARKETING 2 LLC
        PO BOX 1057
ORLANDO          FL     32802

**Amount Due $540.82**

Mail Payment to:

AMERICAN   EXPRESS
P.O.   BOX 650448
DALLAS   TX  75265-0448

||..|.|.|..|.||..||.|.|.|..|..|.||.|..|.|.|.|..||..||

0000349991944766351 0000540820000540082 25ᴴᴴ

| 1. Amount Due at Lease Signing or Delivery. (Itemized below)* | 2. Periodic Rental Payments. Your first payment of $ 266.57 shall be due 02-01-2025 followed by 135 payments of $ 266.57 due: ✓ bi-weekly ___ semi-monthly ___ monthly B. The total of your periodic payments will be: $ 36253.52 | 3. Other Charges. (not part of your periodic payments) Disposition Fee $0.00 Total: $0.00 | 4. Total of Payments. (The amount you will have paid by the end of the Lease.) $ 37236.88 |
|---|---|---|---|
| $ 1250.00 | | | |

## *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY. | | 6. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID. | |
|---|---|---|---|
| (a) Capitalized Cost Reduction | $ 617.30 | (a) Net Trade-In Allowance | $ 0.00 |
| (b) First Periodic Lease Payment | $ 266.57 | (b) Rebates and Noncash Credits | $ N/A |
| (c) Refundable Security Deposit | $ 0.07 | (c) Amount to be Paid by Cash or Card | $ 1250.00 |
| (d) License Fee | $ 173.85 | | |
| (e) Temporary License Fee | $ 0.00 | | |
| (f) Certificate of Title Fee | $ 0.00 | | |
| (g) Private Tag Agency Fee | $ 89.00 | | |
| (h) Vehicle Inspection Fee | $ N/A | | |
| (i) Notary Fee | $ N/A | | |
| (j) Sales/Rental/Lease Tax | $ 43.21 | | |
| (k) Convenience Fee | $ N/A | | |
| (l) LOCAL TAX | $ 0.00 | | |
| (m) RENTAL SURCHARGE | $ 60.00 | | |
| TOTAL: | $ 1250.00 | TOTAL: | $ 1250.00 |

**7. Periodic PAYMENT CALCULATION.** Your periodic payment is determined as shown below.

| (a) | GROSS CAPITALIZED COST. The agreed upon value of the Vehicle ($ 23638.00 ) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) | $23638.00 |
|---|---|---|
| | If you want an itemization of the Gross Capitalized Cost, please check this space: ___ | |
| (b) | CAPITALIZED COST REDUCTION. The amount of any net-trade-in allowance, rebate, noncash credit or cash you pay that reduces the Gross Capitalized Cost | 617.30 |
| (c) | ADJUSTED CAPITALIZED COST. The amount used in calculating your Base Periodic Payment | = $23020.70 |
| (d) | RESIDUAL VALUE. The value of the Vehicle at the end of the Lease used in calculating your Base Periodic Payment | - $ 3954.98 |
| (e) | DEPRECIATION AND OTHER AMORTIZED AMOUNTS. The amount charged for the Vehicle's decline in value through normal use and for any other items paid over the Lease Term | = $19065.72 |
| (f) | RENT CHARGE. The amount charged in addition to the Depreciation and any Amortized Amounts | + $14815.96 |
| (g) | TOTAL OF BASE PERIODIC PAYMENTS. Depreciation and any Amortized Amounts, plus the Rent Charge | = $33881.68 |
| (h) | LEASE PAYMENTS. The number of Payments in your Lease | ÷ 136 |
| (i) | BASE PERIODIC PAYMENT. | = $ 249.13 |
| (j) | SALES/RENTAL/LEASE TAX. ✓ Bi-weekly ___ Semi-monthly ___ Monthly. | + $ 17.44 |
| (k) | OTHER. N/A | + N/A |
| (l) | TOTAL PERIODIC PAYMENT. | = $ 266.57 |

**8. EARLY TERMINATION.** You may have to pay a substantial charge if you end this Lease early. *The charge may be up to several thousand dollars.* The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**9. EXCESS WEAR AND USE.** You may be charged for excessive wear to the Vehicle based upon our standards for normal use, and for miles driven in excess of 17800 miles per year at the rate of 15 cents per mile. You will not receive a rebate or credit if the number of miles driven is less than the above amount.

**10. PURCHASE OPTION AT END OF LEASE TERM.** You have an option to purchase the Vehicle at the End of the Lease Term for: (a) $ 3954.98 ; plus (b) applicable taxes, title transfer fees, and other official fees and charges; plus (c) any amounts necessary to repair the Vehicle to conform with legal requirements for sale (unless you agree to purchase the Vehicle for parts only).

**11. OTHER IMPORTANT TERMS.** You should look to the other terms and conditions of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and other charges if applicable.

**12. LEASE OF VEHICLE.** You agree to lease the Vehicle subject to the terms and conditions of this Lease Agreement. You agree to pay 136 lease payments of $ 266.57 . The first lease payment is due on the date this Lease Agreement is signed. The remainder of your lease payments are due: ✓ bi-weekly ___ semi-monthly ___ monthly beginning on 03-31-2023. All subsequent lease payments should be paid directly to Assignee at Assignee's address indicated on page 1 of this Lease Agreement.

1

EXHIBIT 80

THIS IS A COPY

This is a copy ██████ authoritative Copy ██
by the designated custodian.

**13. OFFICIAL FEES AND TAXES. $ 2737.90** _____ . The total estimated amount you will pay for official fees, license and title fees, and taxes over the Lease Term, whether included in your Base Periodic Payment (Item 7(i)) or assessed otherwise. The actual amount of fees and taxes that you may be required to pay may be higher or lower depending upon the tax rates in effect and the value of the Vehicle at the time the fee or tax is assessed.

**14. LATE CHARGE AND OTHER POTENTIAL CONDITIONAL CHARGES/FEES.** You agree to pay a late charge on each lease payment that is received after it is due at the rate of $5 per day with a maximum of $15. Other Potential Conditional Charges/Fees you may incur include the following: 1) If your leased vehicle is repossessed due to non-payment or other breach of this Agreement, you will be charged up to a $350 repossession fee, which may be lower depending on the state, city or county where your vehicle is principally garaged; 2) In certain states, cities, and/or counties, if you desire to redeem your repossessed vehicle, you may incur a storage fee from the third party vendor that repossessed and is storing your repossessed vehicle (we do not receive any amount of this third party storage fee); 3) If you request a deferral/extension/due date change regarding your Lease, you will be charged a $25 Fee for a Due Date change, a $25 Fee for a one payment bi-weekly or semi-monthly deferral, or a $50 Fee for a 30 day deferral (which could be one monthly lease payment, or two bi-weekly or semi-monthly lease payments); 4) If we extend you a 0% repair deferral account on an approved vehicle repair not covered by warranty and you fail to timely make payments, you will be charged a late fee on said account pursuant to this provision; 5) If you have American Car Center's service department complete a diagnostic evaluation of a potential repair(s), and you decide not to complete the recommended repair(s), you will be charged a $60 Diagnostic Fee; 6) If you choose to pay your lease or purchase option payments pursuant to our one-time phone or website options, you may incur a convenience fee up to $4.95 per payment (ask about our multiple payment options that allow you to avoid convenience fees).

**15. LIMITED/CONDITIONAL RIGHT OF USE AND OPERATION.** This Lease does not give you complete rights with respect to the Vehicle. You have only a limited and conditional right to use and operate the Vehicle provided that you make timely lease payments to Assignee.

**16. GPS SYSTEM.** By signing this Lease Agreement, you agree to permit Lessor to install a GPS system ("the System") in the Vehicle that tracks the vehicle's location and other information. The System remains Assignee's property, and is not an accession to the Vehicle. If you do not make timely lease payments, Lessor may use the System to cause the Vehicle not to start, and you may not be able to use and continue to operate the Vehicle. If you elect to purchase the Vehicle from Assignee at the End of the Lease Term, Assignee will remove the System from the Vehicle at Assignee's expense (For further information, see GPS Addendum document given to you at time of lease signing).

**17. LIMITED WARRANTY.** The Vehicle is subject to the express limited warranty provided by Lessor at the time the Lease is signed. BY SIGNING THIS LEASE, YOU RECOGNIZE AND UNCONDITIONALLY AGREE THAT LESSOR IS LEASING THE VEHICLE TO YOU "AS IS", EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW), AND AS IS PROVIDED IN THE LIMITED WARRANTY PROVIDED SEPARATELY BY THE LESSOR AT THE TIME OF LEASE SIGNING. OTHER THAN AS PROVIDED FOR UNDER THE LIMITED WARRANTY, LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. ANY DEFECT OR UNFITNESS NOT COVERED BY THE LIMITED WARRANTY SHALL NOT IN ANY WAY AFFECT YOUR OBLIGATIONS TO COMPLY WITH THE TERMS OF THIS LEASE AGREEMENT AND TO MAKE LEASE PAYMENTS TO LESSOR'S ASSIGNEE. SEE THE LIMITED WARRANTY DOCUMENT PROVIDED SEPARATELY FOR DETAILS OF THE LIMITED WARRANTY.

### VEHICLE MAINTENANCE, INSURANCE AND LOSS

**18. VEHICLE MAINTENANCE.** YOU MUST MAINTAIN AND SERVICE THE VEHICLE AT YOUR OWN EXPENSE. You are responsible for and agree to follow the owner's manual and maintenance schedule, make all needed repairs, and respond to recall orders. You are also responsible for all operating costs such as gas and oil. You must obtain the Assignee's prior written permission for all improvements and modifications that you make to the Vehicle, and all accessories that you add to the Vehicle shall become Assignee's property without compensation to you.

**19. INSURANCE AND DAMAGE AND LOSS WAIVER.**

YOU ARE REQUIRED TO INSURE THE VEHICLE AT ALL TIMES DURING THE LEASE TERM UNLESS LESSOR PROVIDES OTHERWISE IN WRITING. LESSOR IS NOT PROVIDING VEHICLE INSURANCE OR LIABILITY INSURANCE. YOU MAY PURCHASE REQUIRED INSURANCE THROUGH ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TENNESSEE OR THE STATE IN WHICH YOU LIVE. YOU MAY PROVIDE THE REQUIRED COVERAGE THROUGH EXISTING POLICIES OF INSURANCE.

Failure to obtain and maintain liability insurance is legally required amounts is a default under the Lease Agreement and may result in the termination of the Lease.

Any insurance that you purchase must be acceptable to Assignee and protect both you and Assignee with: (a) comprehensive fire and theft insurance with a maximum deductible amount of $500; (b) collision/property insurance with a maximum deductible amount of $500; and (c) automobile liability insurance with minimum limits for bodily injury or death of $10,000 for any one person and $20,000 for any one accident, and $50,000 for property damage, or the minimum limits required by the State in which the vehicle is principally garaged, whichever is greater. These amounts may not be sufficient to cover all your liabilities and to pay for all repairs to the Vehicle. You may wish to consult your insurance advisor about obtaining additional coverage. You agree to list Assignee as the loss payee and additional insured under your policy. Any insurance that you purchase may not be reduced, cancelled, or terminated by your insurance company without at least 30-days prior written notice to Assignee. You must give Assignee evidence of insurance coverage and renewals whenever requested.

In lieu of obtaining the required collision/property insurance, you have the option of paying a Damage and Loss Waiver fee which provides coverage to waive your liability for certain damage to and loss of the vehicle as more fully described in the Damage and Loss Waiver document provided to you at the time you signed this Lease. If you choose to obtain the required collision/property insurance, you understand and agree that you will be charged a Damage and Loss Waiver fee in the event you fail to maintain the collision/property insurance during the lease term. The Damage and Loss Waiver fee is a substitute for collision/property insurance only (though it is not an insurance product and does not protect you to the same extent as collision/property insurance) for purposes of this Lease, and does not relieve you of your legal obligation to maintain liability insurance as required by state law. The cost of the Damage and Loss Waiver is $30.00 bi-weekly; or $32.50 semi-monthly, or $65.00 monthly, depending on your periodic payment schedule.

You agree at all times to comply with all of the conditions of any insurance policy covering the Vehicle. You further agree to promptly report to Assignee in writing all accidents, damages to the Vehicle and collisions, irrespective of fault, injury, loss, or damage, and any suit, demand, or claim, whether or not justified. You additionally agree to fully cooperate with Assignee and the insurer in all accident investigations, claims, and litigation procedures. You also agree to pay to Assignee all insurance proceeds resulting from a loss or damage to the Vehicle. You authorize Assignee, on your behalf, to receive and make all checks or drafts, and settle or release any claim under any insurance covering the Vehicle based on Assignee's ownership of the Vehicle. Unless a damage and Loss Waiver is in effect, you agree to pay for all repairs to the Vehicle that are not paid out of the insurance proceeds.

**20. VEHICLE USE AND SUBLEASING.** You may not use, or permit others to use the Vehicle: (a) in violation of any law, (b) contrary to the provisions of any insurance policy covering the Vehicle; (c) at any time when required liability insurance is not in effect or Assignee has not been notified that collision/property insurance has lapsed; (d) outside the state where the Vehicle is titled and registered for more than 30 days without Assignee's written consent; (e) outside the United States, except for less than 30 days in Canada; or (f) as a private or public carrier. You will keep this Lease and Vehicle free of all liens and encumbrances. You may not assign this Lease or sublease or any interest in the vehicle without Assignee's prior written consent.

### LEASE END

**21. LEASE ENDS.** You must return the Vehicle to the Lessor at Lessor's address unless Assignee specifies another place. For your convenience, you may return the Vehicle up to 7 days before the scheduled End of the Lease Term. If you fail to return the Vehicle, you must continue to pay the periodic lease payments (Item 7) plus other damages to Assignee. Payment of these amounts does not authorize you to keep the Vehicle.

**22. EXCESS WEAR AND USE.** Unless you elect at your option to purchase the Vehicle at the End of the Lease Term, you will be responsible for all repairs to the Vehicle that are not the result of normal wear and tear, and that are not listed on the final page of this Lease Agreement to be present at the time this Lease Agreement is signed. These repairs include those necessary to repair or replace: (a) Tires which are unmatched, unsafe or have less than 1/8 inch of remaining tread in any place; (b) Electrical or Mechanical defects or malfunctions; (c) Glass, Paint, Body Panels, Trim and Grill Work that are broken, mismatched, chipped, scratched, pitted, cracked, dented or rusted during the lease term; (d) Interior rips, stains, burns or worn areas; and (e) All damage that occurred during the lease term, which would be covered by collision or comprehensive insurance, whether or not such insurance is actually in force. You are obligated to repair any damages resulting from the removal of a cellular telephone, radar detector, or other similar types of equipment. All damage repairs are subject to Assignee's approval and acceptance. Repairs must be made with original equipment manufacturer parts or those of equal quality. If you have not had the repairs made before the Vehicle is returned to Lessor, you agree to pay the estimated costs of such repairs, even if the repairs are not made prior to Assignee's sale of the Vehicle. Unless you elect at your option to purchase the Vehicle at the End of the Lease Term, you additionally are obligated to pay excess mileage fees to Assignee as provided in Section 9 of this Lease Agreement. If Assignee believes that the Vehicle odometer malfunctioned or was tampered with, and you cannot prove the actual Vehicle mileage, you agree to pay for whatever excess miles Assignee reasonably estimates the Vehicle to have been driven.

**23. ODOMETER STATEMENT.** Federal law requires you to complete a statement of the Vehicle's mileage at the end of this Lease. Federal law also prohibits you or anyone else from tampering with the Vehicle's odometer. Failure to complete an odometer disclosure statement, or making any false statement, may result in fines and/or imprisonment.

### DEFAULT AND LOSS OF VEHICLE

**24. DEFAULT.** You will be in default under this Lease Agreement if: (a) you fail to make any payment when due or; (b) a bankruptcy petition is filed by or against you, or (c) any governmental authority seizes the Vehicle and does not promptly and unconditionally release the Vehicle to you; or (d) you have provided false or misleading material information when applying for this Lease; or (e) you fail to keep any other agreement in this Lease Agreement; or (f) your driver's license is suspended, revoked, cancelled, or is otherwise restricted; or (g) the



EXHIBIT  ௨

THIS IS A COPY
...[illegible]... ACCT's 589000... Provicive Copy is of
by the designated custodian

Vehicle is stolen, lost, destroyed or is otherwise rendered unavailable or unsuitable for use or declared a total loss; or (h) you die or are declared incompetent; or (i) or you otherwise fail to comply with any other term, provision or condition of this Lease or fail to keep any other promise made to Lessor or Assignee.

If you are in default Assignee may do any of the following: (a) end the Lease and require you to pay the amount due at early termination;  (b) take any action Assignee reasonably believes is required to protect its interest in the Vehicle (for example assessing a Damage and Loss Waiver fee); (c) take (repossess) the Vehicle wherever Assignee finds it and enter any property where the Vehicle may be do so; (d) add any amounts Assignee spends taking these actions to your Lease obligation and charge rent on the amount added or, at Assignee's option, ask you to pay these amounts right away; (e) make a claim for insurance or refunds available on your default and apply such amount to the amount you owe; (f) cancel any optional products and services included with the Lease and apply any refund to amounts due on the Lease; (g) sue you for damages or to get the Vehicle back; or (g) pursue any other remedy the law gives Assignee.

Assignee will exercise its rights without breach of the peace, at reasonable times and places, in a reasonable way. Assignee may use the license plates on the Vehicle to move it to a storage place. After repossessing the Vehicle, Assignee will hold it free of any rights you may have under this Lease. Assignee may take and store any personal items that are in the Vehicle. If you do not ask for these items back, Assignee may dispose of them as the law allows. Unless you tell Assignee within ten (10) business days of any personal property you claim was in the Vehicle when it was repossessed, Assignee will not be responsible for that property. You will pay Assignee's reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees, collection costs, and court costs.

25. **TOTAL LOSS OR DESTRUCTION OF VEHICLE.** If the Vehicle is stolen or declared to be a total loss, you are obligated to notify your insurance company and to coordinate with your insurance company to ensure payment by your insurance company to Assignee on your claim. If you complied with all provisions of this Lease, and the Vehicle is declared a total loss by your insurance company, you will owe us nothing more once we have received (i) all of the insurance proceeds due under the insurance policy required under this Lease, (ii) the deductible under such insurance policy, (iii) all Payments due and owing, and all other amounts due and owing (excluding excess mileage and wear), under this Lease and not paid up to the date when the Vehicle is declared a total loss. If the Vehicle is a total loss and the requirements of this Section are not satisfied, you will owe Assignee the early termination liability (see below).

## EARLY TERMINATION LIABILITY

26. **EARLY TERMINATION.** You may terminate this Lease early if you satisfy your early termination obligation. If the lease is terminated early by you or by us, you must notify Assignee in writing and return the Vehicle to Lessor at Lessor's address and pay Assignee the early termination liability described in Section 27 within 10 business days of the date Assignee asks for it. As provided above, Assignee may terminate the Lease early if you are in default.

27. **EARLY TERMINATION LIABILITY.** If the Lease is terminated early you agree to pay the following early termination liability:

The lesser of:

> **Calculation A:** (Adjusted Capitalized Cost, see Par. 7(c)) MINUS (Depreciation portion of periodic payments already paid, which is the amount shown in Par. 7(e)) divided by the number of lease payments shown in Par. 7(h) times the number of periodic payments already paid) MINUS (Security deposit) MINUS (Realized Value of Vehicle at time of early termination); or

> **Calculation B:** the total of the following: (i) the total of your remaining base periodic payments; (ii) an excess wear charge, if applicable; and (iii) an excess mileage charge, if applicable, for any miles in excess of the permitted mileage during the scheduled lease term at the rate per mile provided in the Lease.

In addition to the amount you must pay under *Calculation A* or *Calculation B*, you must also pay:

- any past due periodic payments at time of early termination;

- any official fees and taxes related to the early termination; PLUS

- any other amounts due under this Lease at time of early termination including any past due and/or unpaid late charges or damage waiver fees or other amounts due because you failed to meet your obligations under this Lease.

The Realized Value of the Vehicle is: (i) the price we receive for the Vehicle at disposition through a public or private sale; (ii) the highest offer we receive for disposition of the Vehicle; or (iii) the fair market value of the Vehicle determined in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles, including without limitation, using one or more published price indexes or guidebooks regularly consulted in the industry as a source of wholesale vehicle values.

To the extent your early termination liability exceeds the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's wholesale value. If you do so within 10 days of the date you notify Assignee of the early termination or you are notified of the Assignee's termination of the Lease, the appraised value will be used as the Realized Value of the Vehicle. The appraiser must be an independent third party agreeable to both you and Assignee and you must pay for any appraisal. The appraisal will be binding.

We may apply all or part of your security deposit to what you owe us.

## ADDITIONAL PROVISIONS

28. **PURCHASE OPTION.** If you decide to purchase the Vehicle upon Early Termination or Scheduled Termination, you agree to re-register and re-title the Vehicle in your name no later than 30 days from the time you purchased it and pay any fees or charges to the government agency processing said re-registration and re-titling. If you fail to do so, Assignee reserves the right to cancel the registration.
- **Upon Early Termination.** You have an option to buy the Vehicle "as is" prior to the End of Lease Term. The price will be all remaining Periodic Rental Payments (see Par. 2) plus the Residual (see Par. 7 (c)), plus any other amounts past due and/or unpaid under the Lease. You must also pay any taxes or official fees (for taxes, tags, license and registration) imposed on our sale of the Vehicle to you.
- **Upon Scheduled Termination.** At the End of the Lease Term, you may purchase the Vehicle "as is" for the amount set forth in the Paragraph 10 Purchase Option at End of Lease Term disclosure on page 1 of this Lease, plus the other amounts, if any, described in Paragraph 10.

29. **RETURN CHECK/ACH FEE.** If you make a payment under this Lease by check or ACH and your check or ACH is returned unpaid for any reason, you agree to pay Assignee a returned check or ACH fee of $25.00.

30. **ASSIGNMENT AND ADMINISTRATION.** Lessor will assign this Lease to Assignee, after which Assignee will have all of Lessor's rights and remedies. You must pay all amounts due under this Lease to Assignee at Assignee's address indicated on page 1 of this Lease Agreement.

31. **SECURITY INTEREST.** To secure your obligations under this Lease Agreement, you grant Lessor and Assignee a security interest in: (a) the security deposit that you paid to Lessor at the time this Lease Agreement was executed; (b) the loss proceeds of any Vehicle insurance; and (c) the proceeds of any credit life or credit disability insurance policy and any service contract(s) purchased in connection with this Lease. Lessor may also assert a statutory lien or privilege against the Vehicle and its contents in the event that you fail to pay Lessor for repairs, services, storage parts and accessories to the Vehicle.

32. **TRUE LEASE.** It is declared to be the intent of the Lessee, the Lessor, and the Assignee that this Lease shall for all purposes constitute a "true lease"; if for any reason that a court should determine that this transaction constitutes a secured transaction, you hereby grant us a security interest in the vehicle, and all proceeds derived from the vehicle.

33. **TAXES.** You agree to promptly pay (or to reimburse Assignee for) all sales, use, lease and personal property taxes relating to this Lease or the Vehicle, whether these taxes apply directly to you or to the Lessor or Assignee. You agree to pay these amounts even if they are assessed after the Lease ends.



EXHIBIT

THIS IS A COPY
This is a copy, copy of the original document on file with the designated depositor.
by the designated depositor

34. **TITLING AND OTHER FEES.** The Vehicle will be owned by and titled in the name of Assignee. You agree to register the Vehicle as directed by Assignee. You agree to pay (or to reimburse Assignee for) all license, title and other related fees that may apply to the Vehicle over the Lease Term. You further agree to pay all tickets, fines and penalties that may be assessed against you, any driver or occupant of the Vehicle, or the Vehicle itself. If for any reason Assignee pays a ticket, fine or penalty on your behalf, you agree to reimburse Assignee and to pay Assignee an additional fee in the amount of $25.00 for each ticket, fine or penalty that Assignee pays.

35. **INDEMNITY.** You unconditionally agree to indemnify and hold harmless Lessor, Assignee and their employees or agents from any loss or damage to the Vehicle and its contents, and from all claims, losses, injuries (including any and all third party injuries), expenses and costs (including without limitation, attorneys' fees other costs of defense) related to the use, operation, maintenance, or condition of the Vehicle that may be asserted by any person (including, but limited, by you or your agents and employees), whether such claim may be based on negligence, breach of contract, breach of warranty, absolute liability, or otherwise.

36. **SECURITY DEPOSIT.** Your security deposit may be used by Assignee to pay all amounts that you owe under this Lease. You agree that you will not be paid or given credit for interest on your security deposit.

37. **GOVERNING LAW.** This Lease shall be subject to the laws of the United States and the State of Tennessee without regard to the conflict of laws rules of any state. If Tennessee law does not allow any of the provisions in this Lease, the ones that are not allowed will be void. The remaining provisions of this Lease will still be valid.

38. **CHANGE IN RESIDENCE OR VEHICLE LOCATION.** You agree to promptly notify Assignee in writing should you change the location address or change the location of your principal place of employment. You further agree to immediately notify Assignee in writing should you change the location where the Vehicle is principally kept when not in use elsewhere.

39. **MODIFICATION.** Any change in this Lease must be in writing and signed by you and Assignee.

40. **RESPONSIBILITY.** Each person who signs this Lease Agreement as a Lessee or Co-Lessee is jointly and severally liable under this Agreement and is fully liable for all payments, whether or not Assignee attempts to collect from other signers.

41. **ARBITRATION PROVISION AND WAIVER OF JURY TRIAL.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and waive their rights to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:** A. For purposes of this Arbitration provision and Waiver of Jury Trial ("Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Lease, the information you gave Lessor before entering into this Lease, and any past agreement or agreements between you and Lessor or Assignee; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against Lessor or Assignee; (g) all claims asserted by you individually against Lessor or Assignee and/or any of Lessor's or Assignee's employees, agents, servicers, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against Lessor or Assignee and/or related third parties ("Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by Lessor or Assignee or related third parties of any non-public personal information about you. B. You acknowledge and agree that, by entering into this Arbitration Provision: **(i) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST LESSOR OR ASSIGNEE OR RELATED THIRD PARTIES; (ii) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST LESSOR OR ASSIGNEE OR RELATED THIRD PARTIES; and (iii) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST LESSOR OR ASSIGNEE AND/OR RELATED THIRD PARTIES.** C. Except as provided in Paragraph F below, all disputes including any Representative Claims against Lessor or Assignee and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.** D. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested. Regardless of who demands arbitration, either you or Lessor or Assignee may choose to have any dispute arising under this Lease resolved by binding arbitration under the rules then in effect of the American Arbitration Association ("AAA") or any other arbitration organization you choose and that Assignee approves in writing ("the Arbitration Organization"). However, the parties may mutually agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration shall respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Lease or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above. E. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. F. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute which cannot be adjudicated within the jurisdiction of a small claims tribunal shall be resolved by binding arbitration pursuant to the terms agreed to in this Arbitration Provision. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. Furthermore, nothing in this Arbitration Provision shall limit the right of us (a) to repossess the vehicle by the exercise of any power under the Lease or under applicable law, (b) to exercise self-help remedies, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property or injunctive relief, or to seek or obtain any traditional equitable relief which does not claim money damages from a court having jurisdiction. The institution and maintenance by you or Lessor or Assignee of any action set forth in this Paragraph F shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted. G. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. This Arbitration Provision is binding upon and benefits Lessor and Assignee, our successors and assigns, and related third parties. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and Lessor and Assignee and continues in full force and effect unless you and Lessor or Assignee otherwise agree in writing. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Provision, unless the provision precluding the arbitrator from conducting class or consolidated arbitration as set forth in paragraph A-C above is deemed invalid or unenforceable, in which case this entire Arbitration Provision shall be deemed void. H. Assignee agrees to pay any initial filing fee you may owe should you choose to arbitrate. Additionally, Assignee agrees for only the first day of arbitration to pay the following fees up to a maximum of $2500 in the aggregate: the arbitrator's fee, those reasonable arbitration expenses or costs (excluding attorney fees) assessed to you that you would not pay if you had brought a dispute in court, and any other reasonable expense or cost unique to the arbitration process. Assignee will also pay other amounts an arbitrator determines that Assignee must pay in order to ensure the enforceability of this Arbitration Provision. This Arbitration Provision shall survive termination or expiration of this Lease. I. **OPT-OUT PROCESS.** You may choose to opt-out of this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify Assignee in writing within thirty (30) calendar days of the date of this Agreement at the following address: American Financial Plan: Legal Department, 6400 Winchester Road, Memphis, Tennessee 38115. Your written notice must include your name, address, social security number, the date of this Lease, and a statement that you wish to opt-out of the Arbitration Provision.

4



EXHIBIT

THIS IS A COPY
That this copy view of the authorized ... Copy ...
a, the copy ACCHA 568089

**YOU ACKNOWLEDGE THAT THIS LEASE CONTAINS AN ARBITRATION PROVISION, THAT YOU HAVE READ THE ARBITRATION PROVISION AND AGREE TO ITS TERMS.**

**THIS IS A LEASE AGREEMENT.  THIS IS NOT A PURCHASE AGREEMENT.**

**PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

NOTICE: (1) Do not sign this Lease before you read it or if it has any blank spaces to be filled in. (2) You have the right to get a filled-in copy of this Lease. You state that you have been given a filled-in copy of this Lease at the time you sign it, and that you have been notified of the assignment of this Lease by the Lessor to Assignee.

Lessee: _JEFFREY HIRSCHHORN_   Co-Lessee: _____

DELIVERY RECEIPT: Lessee has received the Vehicle without reservation of rights, and except as noted below, Lessee acknowledges that the Vehicle is in good condition and operating order.

List any and all obvious dents, damages, tears, and broken items with respect to the Vehicle as of the time the Vehicle is delivered to and accepted by you.

Lessee: _JEFFREY HIRSCHHORN_   Date: 02-21-2023

Co-Lessee: _____   Date: _____

**CERTIFICATE OF INSURANCE**

I, the undersigned Lessee, hereby certify to Lessor and Assignee that I have arranged for the purchase of: (a) comprehensive fire and theft insurance with respect to the Vehicle with a maximum deductible amount of $500; and (b) property/collision insurance with respect to the Vehicle with a maximum deductible amount of $500; and (c) automobile liability insurance with minimum limits for bodily injury or death of $10,000 for any one person, and $20,000 for any one accident and $10,000 for property damage, or the minimum limits required by the State in which the vehicle is principally garaged, whichever is greater. My insurance company listed below has committed to issue a policy of insurance in my name, also naming Assignee as a loss payee beneficiary and additional insured party. My insurance policy further provides or will provide that my insurance company may not reduce coverage, or cancel or terminate my insurance policy without at least 30-days prior written notice to Assignee.

Insurance Company: (Name and Address)   Agent: (Name and Address)

Lessee: _JEFFREY HIRSCHHORN_   Co-Lessee: _____

Date: 02-21-2023

Attest:
Lessor: _____
By: _YISROEL CARLEBACH_
Title: Authorized Lessor Representative _____

**ASSIGNMENT**

Assignor/Lessor does hereby assign and Assignee hereby accepts the assignment of this Motor Vehicle Lease subject to the terms set forth in this Lease and the Agreement between Assignor/Lessor and Assignee.

Assignor: _____   Assignee: _____

Date: 02-21-2023   Date: 02-21-2023

5

EXHIBIT



**AUTHORIZATION TO TITLE AND REGISTER A MOTOR
VEHICLE, MOBILE HOME OR RECREATIONAL VEHICLE
Department of Highway Safety and Motor Vehicles**

**Date:** April 3, 2023

This affidavit verifies that the **dealer license number** referenced below has ☑ failed to meet the licensure law or has been ☐ suspended, ☐ revoked, ☐ cancelled, ☐ expired, or is otherwise **no longer valid** in the **State of Florida.**

**Dealer Information:**

Dealer's Name: American Car Center

Address: 2300 S US Hwy 17-92

City, State, Zip Code: Longwood, FL 32750

Dealer License Number: VI/1115646/7

**Consumer Information:**

Consumer's Name: Jeffrey Hirschkorn

Address: 3301 Sanford Ave

City, State, Zip Code: Sanford, FL 32773

☑ Motor Vehicle  ☐ Mobile Home  ☐ Recreational Vehicle

**Purchase Information:**

| Chevrolet | 2015 | KL7CJLSB1FB065878 |
|---|---|---|
| Make | Model Year | Vehicle Identification Number (VIN) |

**Vehicle Lien Holder Information:**

☐ There is No  or  Lien Holder Name: AF Title Co

Lien Holder    Lien Holder Address: 6400 Winchester Rd

Lien Holder City/State/Zip Code: Memphis, TN 38115

**NOTE:** This authorization, issued by the Regional Office, reflects whether a lien exists against the purchaser (the consumer named in the document). This lien should be brought forward onto the title. Any other liens reflected in FRVIS should be against the previous owner and a lien satisfaction will be required before the title can be issued.

**Regional Administrator Information:**

Signature: _Allison Clark_

Name: Gerard J Robichaud Jr., Regional Administrator

Address: 2575 S. Volusia Ave., Suite 300

City/State/Zip Code: Orange City/FL/32763

Telephone: (386) 736-5107

*[Stamp: MOTOR VEHICLE FIELD OFFICE  REGION 4  Regional Office Stamp  FLORIDA]*

**Instructions:** Take this original Authorization Affidavit to the local Tax Collector's Office along with originals or copies of all documents of proof of purchase.

**ONLY ORIGINAL AFFIDAVIT FORMS ARE VALID FOR ANY TRANSACTION**

HSMV 86030 (Rev. 08/11)

EXHIBIT 3



**FLORIDA HIGHWAY SAFETY    AND MOTOR VEHICLES**

**Dave Kerner**
Executive Director
2575 S. Volusia Ave., Ste. 300
Orange City, FL 32763
www.flhsmv.gov

April 3, 2023

Jeffrey Hirschkorn
3301 Sanford Ave #32
Sanford, FL 32773

Dear Mr. Hirschkorn:

This letter is in response to the complaint you filed against American Car Center., license number VI/1115646/7. The dealer has ceased operation and will be unable to complete your title or registration transfers.

The enclosed Authorization to Title and Register a Motor Vehicle will verify the Division of Motor Vehicles' records indicate this dealer is unable to complete title and registration. You may take this affidavit along with your proofs of purchase to a **Florida** tax collector's office for assistance in applying for title. If you want to title this vehicle in another state, you must first obtain a Florida title, as other states will not accept our Authorization to Title and Register a Motor Vehicle. **You will be required to pay tag and title fees, even if you have already paid the dealer.** You will not be required to pay sales tax again if your bill of sale (dealer's invoice) indicates the dealer collected sales tax.

If you have a tag to transfer, you will also be required to provide your registration so that the tag can be transferred to your new vehicle. If you financed the vehicle, your lien holder's (finance company) information must be provided to the tax collector's office so that it can be recorded.

Section 320.27(10), Florida Statutes, requires motor vehicle dealers to post a surety bond in the amount of $25,000, to provide protection to any person in a retail transaction who may suffer a loss as a result of any failure by the dealer to comply with the conditions of any written contract in the sale of any vehicle, or any violation of Chapter 319 and 320, Florida Statutes.

This dealership was bonded by Hudson Insurance Company. The bond number is 10106540. The Agent is Eric Fauerbach with Surety Bonds Direct. Call 800-608-9950 if you wish to initiate a claim. If you are dissatisfied with the bond company's response to your inquiry, you may seek assistance from the Florida Insurance Commissioner's office at 1-850-413-3140.

The Department of Highway Safety and Motor Vehicles values our customers. Providing you excellent customer service is our top priority. Please give us feedback regarding your recent experience with the Department via our new online customer service survey at: www.flhsmv.gov.

Sincerely,

*Allison Clark*

Allison Clark
Compliance Examiner

· Service · Integrity · Courtesy · Professionalism · Innovation · Excellence ·
An Equal Opportunity Employer
Division of Motorist Services · Bureau of Motor Vehicle Field Operations
Telephone 386-736-5108 · FAX 386-736-5112    Email: dmvregion4@flhsmv.gov

Printed: 8/29/2024 8:13:15AM
By: gwinnc

# Shelby County Sheriff's Office

## Case Profile - 24016307

JEFFREY R HIRSCHKORN

vs

RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER, LLC AF TITLE COMPANY FLA DEPT OF HIGHWAY SAFETY & MOTOR VEHICLES

| Fee | Total Amount | Adjustments | | Receipts | | Balance | |
|---|---|---|---|---|---|---|---|
| | | Billing | Debtor | Billing | Debtor | Billing | Debtor |

Received: 08/13/2024    Summons    Expires: 09/13/2024    County:

SEMINOLE COUNTY COURT
FL

Docket #:    2024CC3591
Status:    Closed

| Role | Name | Address |
|---|---|---|
| Defendant | AF TITLE COMPANY | 6400 WINCHESTER Road Memphis TN |

## Service

| Servee | Assigned Deputy | Date/Time | Serving Deputy | Type | Status |
|---|---|---|---|---|---|
| AF TITLE COMPANY | NONE | 08/26/2024   10:25 am | S-11174 Gates | Not To Be Found | NTBF |

## Notes

| Entered | Revised | CheckName | Note |
|---|---|---|---|
| 08/29/2024  08:13AM | | | AF TITLE COMPANY / AMERICAN CAR CENTER IS NO LONGER AT THIS LOCATION AND IS PERMANTELY CLOSED  (NTBF)  I-CAR & CREDIT FINANCE IS THE NEW  ( RESIDENT )   SENT BACK TO JEFFREY HIRSCHKORN  P.O.BOX  1186  ORLANDO FL. 08/27/24 |

## Disbursements

| Check Date | Check # | CheckName | Principal | Interest | Commission | Fees | Refund | Unapplied | Total |
|---|---|---|---|---|---|---|---|---|---|

| Person or Company to be Served | RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC<br>2300 S HWY 17-92<br>LONGWOOD, FL 32750 |
|---|---|

**Plaintiff:**    **JEFFREY R HIRSCHKORN**

**vs.**

RAC DEALERSHIP LLC DBA AMERICAN CAR CENTER LLC AF TITLE CO/FL DHSMV AND STATE OF FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLE

**Defendant:**

**Case #: 24CC3591**                              **Due Date:**
**Court: SEMINOLE COUNTY/COUNTY COURT**
**Type of Writ: SUMMONS/COMPLAINT FOR DECLARATORY JUDGMENT AND RELIEF/EXHIBIT A-C**        **Sheriff's #: 24006943**

**Received the above named writ on: 07/09/2024 at 11:12 AM and served/returned the same on: 07/17/2024 at 10:35 AM in SEMINOLE COUNTY, Florida, as follows:**

**Non-Served**

**By returning said writ non-served for the reason listed in the Special Remarks, that after due diligence to locate, the named person, to wit:**

**Special Remarks:**
        **Vacant location.**

**Dennis M. Lemma, SHERIFF SEMINOLE COUNTY, FLORIDA**

/s/  *Christine Smith* 389074

**Deputy Sheriff/Civil Process Officer**