**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| RAC INVESTMENT HOLDINGS, LLC, *et al.*,[1] | Case No. 23-10316 (BLS) <br> (Jointly Administered) |
| Debtors. | |
| | **Hearing Date: October 8, 2025 at 3:00 p.m. (ET)** <br> **Objection Deadline: September 22, 2025 at 4:00 p.m. (ET)** |

**CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER
APPROVING SETTLEMENTS OF CHAPTER 5 CAUSES
OF ACTION PURSUANT TO FED. R. BANKR. P. 9019**

David W. Carickhoff, the Chapter 7 Trustee (the "Trustee") for the jointly administered bankruptcy estates of the above-captioned debtors (collectively, the "Debtors") hereby moves this Court for entry of an Order Approving Settlements of Chapter 5 Causes of Action, pursuant to Fed. Rule of Bankr. P. 9019(a), and in support thereof, states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The basis for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, where applicable are: RAC Investment Holdings, LLC (7349); RAC King, LLC (6605); RAC Dealership, LLC (3862); RAC Intermediate Holdings, LLC (4792); RAC Servicer, LLC (3735); and RAC Asset Holdings, LLC (8701).

230964088 v2

**BACKGROUND**

4. On March 14, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with this Court under chapter 7 of the Bankruptcy Code, thereby commencing these chapter 7 bankruptcy cases (the "Chapter 7 Cases").

5. On March 14, 2023, the Trustee was appointed as chapter 7 trustee of the Chapter 7 Cases pursuant to section 701(a) of the Bankruptcy Code. The section 341(a) meeting of creditors was held and concluded.

6. On March 17, 2023, the Court entered an order providing for the joint administration of the Chapter 7 Cases for procedural purposes only, with Case No. 23-10316 (BLS) (RAC Investment Holdings, LLC, *et al.*) designated as the lead case [D.I. 13].

7. Prior to the Petition Date, the RAC Dealership, LLC operated the Debtors' vehicle dealership business under the name "American Car Center" (the "Dealership Business"). At its peak, the Dealership Business maintained 68 dealerships located in 10 states in the southeastern United States. The Debtors reduced the number of active dealerships and were operating 45 dealerships prior to ceasing business in February of 2023.

8. In accordance with his duties under the Bankruptcy Code, the Trustee reviewed each of the Debtors' financial books and records and identified several entities who received potentially avoidable transfers during the ninety-day period prior to the Petition Date (the "Preference Period"). The Trustee then contacted recipients of the potentially avoidable transfers and requested that they provide information, defenses and supporting documents regarding the transfers.

9. For those recipients of transfers with whom the Trustee was unable to reach resolution, the Trustee either entered into tolling stipulations agreeing to toll and extend the

applicable time periods and statutes of limitations to commence an avoidance action or commenced adversary proceedings by filing complaints, pursuant to sections 502(d), 547, 548, and 550 of the Bankruptcy Code, seeking to avoid and recover the avoidable transfers and disallow claims of the recipients of those transfers.

10. On April 9, 2025, the Court entered the *Order Establishing Procedures Governing Associated Adversary Proceedings Brought Pursuant to 11 U.S.C. §§ 502, 547, 548 and 550* [D.I. 360] (the "Settlement Procedures Order"). Approval of the Trustee's avoidance action claims in these Chapter 7 Cases, including the settlement discussed herein, are governed by the Settlement Procedures Order.

11. The Trustee and each of the settling parties subject to this Motion entered into arm's length and good faith negotiations concerning the claims asserted for the Avoidable Transfers and the Trustee analyzed and considered all defenses prior to reaching the settlements summarized below.[2]

## THE SETTLEMENT AGREEMENTS

A. The Windstream Settlement

12. After reviewing the Debtors' books and records, the Trustee determined that certain of the Debtors made approximately $283,400 in transfers to Windstream Holdings II, LLC, and Windstream Communications, LLC (together, "Windstream") that may be avoided, recovered and/or otherwise remedied under applicable bankruptcy and non-bankruptcy law (the "Windstream Transfers"). The Trustee subsequently sent a letter to Windstream requesting information on any potential defenses it may have to avoidance of the Windstream Transfers.

---

[2] The terms of each settlement agreement summarized in this Motion in no way alter, change, or amend the actual terms set forth in the applicable settlement agreement with each of the settling parties. In the event that there are any inconsistencies between this summary and the actual terms of any settlement agreement, the language set forth in that settlement agreement shall control.

230964088 v2

13. After receipt of the Trustee's letter, the parties entered into informal discussions and exchanged information on Windstream's defenses.  On or about March 10, 2025, the Trustee and Windstream entered into a tolling agreement to preserve the status quo and toll all applicable statutes of limitations or repose or other rule while they exchanged information and held discussions pertinent to the Windstream Transfers.

14. During their negotiations, Windstream asserted that the Windstream Transfers are not subject to avoidance and recovery on several grounds, including that they were made in the ordinary course of business and/or exempt from avoidance by the subsequent new value defense. Based on the information provided by Windstream, the Trustee determined that Windstream's subsequent new value defense could potentially reduce preference exposure to an amount less than $100,000.  After analysis of Windstream's ordinary course of business defense and continued arms' length and good faith negotiations, the parties reached a resolution to resolve the Trustee's claims to avoid and recover the Transfers in exchange for Windstream's cash payment to the Trustee of $29,726.92 and its release and waiver of claims arising under sections 502(h) of the Bankruptcy Code.  The terms of the Windstream settlement were incorporated into a settlement agreement executed by the parties and attached hereto as **Exhibit A**.

B. The Vertex Settlement

15. The Trustee determined that certain of the Debtors made approximately $423,291.59 in transfers to Vertex Inc. ("Vertex") that may be avoided and recovered by the Trustee on behalf of the Debtors' estates (the "Vertex Transfers").  The Trustee subsequently sent a letter to Vertex requesting information on any potential defenses it may have to avoidance of the Vertex Transfers.

16. On March 13, 2025, the Trustee commenced Adversary Proceeding No. 25-50434 (BLS) (the "Vertex Adversary Proceeding") against Vertex seeking to avoid and recover the Transfers. After commencing the Vertex Adversary Proceeding, the parties entered into discussions and exchanged information on Vertex's defenses to avoidance and recovery of the Vertex Transfers.

17. Vertex provided the Trustee with information in support of its defenses, including that (a) it provided sales and use tax preparation, filing and payment services to the Debtors, and that approximately $417,000 of the Vertex Transfers were on account of tax payments due and payable by Debtors and made through Vertex and (b) the Transfers were made in the ordinary course of business. The Trustee analyzed and considered Vertex's defenses, and as a result of arms' length and good faith negotiations, the parties agreed to resolve the Trustee's claims to avoid and recover the Vertex Transfers in exchange for Vertex's cash payment to the Trustee of $3,500 and its release and waiver of claims arising under sections 502(h) of the Bankruptcy Code. The terms of the Vertex settlement were incorporated into a settlement agreement executed by the parties and attached hereto as **Exhibit B**.

C. The Right Way Auto Transport Settlement

18. The Trustee determined that certain of the Debtors made approximately $709,673.60 in transfers to Right Way Auto Transport, Inc. ("Right Way") that may be avoided and recovered by the Trustee on behalf of the Debtors' estates (the "Right Way Transfers"). The Trustee subsequently sent a letter to Right Way requesting information on any potential defenses it may have to avoidance of the Right Way Transfers.

230964088 v2

19. On or about March 10, 2025, the Trustee and Right Way entered into a tolling agreement to preserve the status quo and toll all applicable statutes of limitations or repose or other rule while they exchanged information and held discussions pertinent to the Right Way Transfers. During negotiations, Right Way provided information and asserted that the Right Way Transfers are not subject to avoidance and recovery on several grounds, including ordinary course of business and that it provided substantial subsequent new value. After reviewing Right Way's documents and information and analyzing its defenses, including support for the new value defense, the parties agreed to resolve the Trustee's claims to avoid and recover the Right Way Transfers in exchange for Right Way's cash payment of $25,000 and its release and waiver of claims arising under sections 502(h) of the Bankruptcy Code. The terms of the Right Way settlement were incorporated into a settlement agreement executed by the parties and attached hereto as **Exhibit C**.

### RELIEF REQUESTED

20. By this Motion, the Trustee seeks approval, pursuant to Bankruptcy Rule 9019, of the each of the settlement agreements annexed as exhibits hereto (collectively, the "Settlement Agreements") and entered into with Windstream, Vertex and Right Way (collectively, the Settling Parties").

21. Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a); *see also Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996). Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Id*. at 395.

22. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id*. at 393. In striking this balance, the Court should consider the following four factors: "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." *Id*. *See also In Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (explaining that, in determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

23. It is well-established that a settlement proponent need not convince the court that the settlement is the best possible compromise, but only that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp*., 398 B.R. 816, 833 (Bankr. D. Del. 2008); *see also In re W.R. Grace & Co*., 475 B.R. 34, 77-78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the Martin factors, courts should not have a mini-trial on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." (citations and internal quotation marks omitted)).

24. A review of the four *Martin* factors demonstrates that the settlement with the Settling Parties should be approved. The Trustee and his professionals invested significant time and effort in analyzing the Transfers and considered the defenses asserted and information provided by the Settling Parties. Based on the foregoing considerations, and the facts set forth herein, the Trustee respectfully submits that the Settlement Agreements represent a fair and

7

reasonable compromise that is in the best interest of the Debtors' estates. As a result of the settlements, the Debtors' estates will receive $58,000 and the waiver of the Settling Parties' section 502(h) claims.

25.     The Trustee respectfully submits that the settlements are fair, reasonable, and in the best interest of the Debtors' estates and creditors, especially in light of the defenses raised by the Settling Parties as set forth above.

26.     The Trustee likewise believes the settlements are founded on the exercise of sound business judgment by the Trustee. Approval of the settlements will allow for resolution of the Trustee's claims without the need for additional litigation, associated discovery, pre-trial motion practice, and possibly, trial, thus conserving judicial resources, and avoiding the costs, risks and delays that would be incurred were the Trustee to continue his pursuit of the avoidance and recovery of the Transfers. Finally, the Settlement Agreements were the product of arms' length negotiation between the parties, after they engaged in an informal, good faith exchange of documents and information during settlement negotiations, which occurred over the course of several months. Accordingly, the Settlement Agreements should be approved.

## NOTICE

27.     Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Debtors' pre-petition secured lenders, (c) all parties that have requested notice pursuant to Bankruptcy Rule 2002, and (d) the Settling Parties, by counsel. Such notice is reasonable in light of the circumstances of these Chapter 7 Cases and the nature of the relief sought herein.

230964088 v2

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter the attached Order granting the Motion, approving the Settlement Agreements, and granting such other and further relief as is just and equitable.

Dated: September 8, 2025 **ARCHER & GREINER, P.C.**

*/s/ Natasha M. Songonuga*
Natasha M. Songonuga (Bar No. 5391)
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Tel: (302) 777-4350
Fax: (302) 777-4352
E-mail: nsongonuga@archerlaw.com

-and-

Gerard DiConza
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 682-4940
Email: gdiconza@archerlaw.com

*Attorneys for the Chapter 7 Trustee*

9