**<u>EXHIBIT A</u>**

**<u>WINDSTREAM SETTLEMENT AGREEMENT</u>**

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is made by and between David W. Carickhoff, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of RAC Investment Holdings, LLC, *et al*. (collectively, the "Debtors") and Windstream Holdings II, LLC, Windstream Communications, LLC, and all subsidiaries and affiliates (collectively, "Windstream" and together with the Debtors, the "Parties.").

## RECITALS

A.     On March 14, 2023 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 7 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases are being jointly administered under case number 23-10316 (BLS).  On the Petition Date, the Trustee was appointed by the Office of the United States Trustee to serve as the chapter 7 trustee for the Debtors' bankruptcy estates.

B.     After reviewing the Debtors' books and records, the Trustee determined that certain of the Debtors made transfers to Windstream that may be avoided, recovered and/or otherwise remedied under applicable bankruptcy and non-bankruptcy law, including but not limited to sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code and applicable state fraudulent transfer or conveyance law (the "Potential Avoidable Transfers").

C.     On or about March 10, 2025, the Parties entered into a tolling agreement to preserve the status quo and toll all applicable statutes of limitations or repose or other rule while they exchanged information and held discussions pertinent to the Potential Avoidable Transfers (the "Tolling Stipulation"). The Tolling Stipulation preserved any claims, causes of action, counterclaims, cross-claims, set-off rights, and other remedies and rights against Windstream that relate to or arise from the Potential Avoidable Transfers, under any legal theory or applicable law, whether asserted by claim, cause of action, counterclaim, cross-claim, set-off, remedy or otherwise (as defined therein, the "Preserved Claims").  The Potential Avoidable Transfers include certain payments and transfers made by the Debtors to Windstream within ninety (90) days prior to the Petition Date in the total amount of $283,403.19 for services or goods provided to the Debtors (the "Identified Transfers").  Other than the Identified Transfers, the Debtors' books and records do not reflect any other payments or transfers made by the Debtors to Windstream and the Trustee is not aware of any such other payments or transfers.

D.     After exchanging documents and information, the Parties entered into discussions about resolving the Trustee's claims to avoid and recover the Transfers.  Windstream asserts that the Potential Avoidable Transfers (including the Identified Transfers) are not subject to avoidance and recovery on several grounds, including that the Potential Avoidable Transfers (including the Identified Transfers) were made in the ordinary course of business and/or exempt from avoidance by the subsequent new value defense.  The Trustee analyzed and considered Windstream's defenses, and as a result of arms' length and good faith negotiations, the Parties reached a resolution, on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties as follows.

## AGREEMENT

1. <u>Incorporation of Recitals</u>. The foregoing recitals are incorporated herein by reference.

2. <u>Settlement Payment to the Trustee</u>. In full and final satisfaction of any and all Preserved Claims the Trustee may have against Windstream to avoid and recover the Potential Avoidable Transfers (including the Identified Transfers), Windstream agrees to pay to the Trustee, on behalf of the Debtors' bankruptcy estates, Twenty Nine Thousand Seven Hundred Twenty-Six Dollars and Ninety-Two Cents ($29,726.92) (the "<u>Settlement Payment</u>"). Windstream shall make the Settlement Payment by check made payable to "David W. Carickhoff, as Chapter 7 Trustee", or in accordance with wire instructions provided by the Trustee. The Settlement Payment shall be paid so that it is received in good funds on or before the thirtieth (30th) business day after full execution of this Settlement Agreement by the Parties..

3. <u>No Admission of Liability</u>. Each of the Parties acknowledges this Settlement Agreement is a compromise of a disputed claim and that the Settlement Payment made hereunder shall not be construed as an admission of liability by any Party.

4. <u>Court Approval</u>. The Parties acknowledge and agree that this Settlement Agreement represents a compromise and settlement of the Preserved Claims. Approval of this Settlement Agreement shall be, and is, in accordance with the proposed *Order Regarding Motion of Chapter 7 Trustee for Order Establishing Procedures Governing Associated Adversary Proceedings Brought Pursuant to 11 U.S.C. §§ 502, 547, 548 and 550* entered on April 9, 2025 (Case No. 23-10316 (BLS), Dkt. No. 360) (the "<u>Settlement Procedures Order</u>"). Upon the Trustee's receipt of the Settlement Payment in full, the Trustee, in accordance with the Settlement Procedures Order, shall file a motion with the Court seeking approval of the Settlement Agreement in accordance with Federal Rule of Bankruptcy Procedure 9019(a). In the event that the Bankruptcy Court does not approve this Settlement Agreement, (a) the Settlement Agreement shall be null and void and of no force and effect, (b) the Parties shall be returned to the same positions they were in prior to execution of this Settlement Agreement, as if the Settlement Agreement had never been executed, and (c) the Trustee shall promptly return the Settlement Payment to Windstream upon entry of the order denying approval of the Settlement Agreement.

5. <u>Settlement Effective Date</u>. This Settlement Agreement shall become effective on the date that the order approving this Settlement Agreement becomes final and no longer subject to appeal (the "<u>Settlement Effective Date</u>").

6. <u>Release by the Trustee on Behalf of the Debtors' Bankruptcy Estates</u>. Effective on the Settlement Effective Date, the Trustee, solely in his capacity as Trustee, and not in any individual or other capacity, on behalf of the Debtors and their bankruptcy estates, and the Debtors, shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged Windstream and each of its past, present and future partners,

non-partner attorneys, agents, employees, vendors, independent contractors, insurers, professionals, representatives, officers, shareholders, directors, assigns and successors-in-interest from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, that arise from or relate to the Preserved Claims that could have been asserted by the Trustee against Windstream to avoid and recover the Potential Avoidable Transfers (including the Identified Transfers); provided that the foregoing release shall not limit nor be deemed to limit the rights of the Trustee to enforce this Settlement Agreement in accordance with its terms.

7.    Release by Windstream.  Effective on the Settlement Effective Date, Windstream shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the Trustee, the Debtors and their estates and each of its past, present and future partners, non-partner attorneys, agents, employees, vendors, independent contractors, insurers, professionals, representatives, officers, shareholders, directors, assigns and successors-in-interest from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, that arise from or relate to the Potential Avoidable Transfers (including the Identified Transfers) or that could have been asserted by Windstream against the Debtors relating to the Potential Avoidable Transfers (including the Identified Transfers); provided that the foregoing release shall not limit nor be deemed to limit the rights of Windstream to enforce this Settlement Agreement in accordance with its terms.  For the avoidance of doubt, nothing in this Settlement Agreement shall be deemed to (a) amend, modify, release or otherwise waive Windstream's previously filed claim(s) and/or any proof of claim(s) against the Debtors or their estates, all of which remain unaffected by this Settlement Agreement.

8.    Claim Waiver.  As of the Settlement Effective Date, Windstream waives and releases any and all claims arising under section 502(h) of the Bankruptcy Code on account of the Settlement Payment.

9.    Extension of Tolling Date.  In the event this Settlement Agreement is not effective before the Tolling Date (as defined in the Tolling Stipulation), Windstream agrees that the Tolling Date shall be extended in respect of the Preserved Claims to such date that is 30 days after the later of (a) Settlement Effective Date or (b) the date the Court enters an order denying approval of this Settlement Agreement (the "Extended Tolling Date").  Windstream waives any statute of limitations, statutes of repose, or other defenses based on the timeliness of any claims and causes of action the Trustee may assert in connection with the Potential Avoidable Transfers (including the Identified Transfers), provided that such claims and causes of action are brought on or before the Extended Tolling Date and have not already expired, passed or accrued as of the date of execution of this Settlement Agreement. For the avoidance of doubt, this paragraph shall be effective upon full execution of this Settlement Agreement by the Parties.

10.    <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement between the Parties regarding the Potential Avoidable Transfers (including the Identified Transfers) and supersedes all prior and contemporaneous oral and written agreements and discussions.  This Settlement Agreement may not be modified, amended or terminated except by an instrument in writing signed by an authorized representative of each of the respective Parties.

11.    <u>Representations by the Parties</u>. The Parties acknowledge that they are entering into this Settlement Agreement knowingly, freely and voluntarily and that the consideration received by each of them is fair and adequate. The Parties represent and acknowledge that they have conferred with and are represented by, or have been given the opportunity to confer with or be represented by, independent legal counsel of their choice with respect to this Settlement Agreement and all matters covered by or related to its subject matter. The Parties declare that they fully understand all of the terms and provisions of this Settlement Agreement and regard the same to be fair and reasonable.

12.    <u>Successors and Assigns</u>. All rights of each Party hereunder shall inure to the benefit of their respective successors and assigns, and all obligations of each Party hereunder shall bind the agents, subsidiaries, employees, officers, directors, predecessors, successors, assigns, heirs, administrators, executors and legal representatives and estates of each Party.

13.    <u>Authority of Signatories</u>. The persons executing this Settlement Agreement on behalf of each Party represent and warrant that they have the authority to do so.

14.    <u>Governing Law</u>. This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to the conflict of laws of the State of Delaware.

15.    <u>Non-Reliance and Construction</u>. The Parties have decided to execute this Settlement Agreement based on information developed independently and not in reliance on representations of any other party.  The Parties agree that each of them has had a full opportunity to participate in the drafting of this Settlement Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against any Party.

16.    <u>Jurisdiction</u>. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate matters arising under or in connection with this Settlement Agreement.  Each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

17.    <u>Attorneys' Fees and Costs</u>. Each Party shall bear its own attorneys' fees and costs.

18.    <u>Waiver</u>: A breach of this Settlement Agreement cannot be waived unless in writing. A failure by either Party to enforce its rights under this Agreement may not be construed as a waiver of any other rights contained in this Agreement.

19.    <u>Headings</u>: The headings used in this Settlement Agreement are inserted for convenience only and may not be used to construe or interpret this Agreement.

20.    <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, including by facsimile or email attachment or executed by any form of electronic means, including DocuSign or DocVerify, each of which shall be deemed an original, but all of which together constitutes one and the same instrument.

IN WITNESS WHEREOF, the Parties have each approved and executed this Settlement Agreement as of the date(s) set forth below.

*[Signature Page to Follow]*

ACCEPTED AND AGREED TO BY:

DAVID W. CARICKHOFF, CHAPTER 7
TRUSTEE

WINDSTREAM HOLDINGS II, LLC,
WINDSTREAM COMMUNICATIONS, LLC

Dated: May 20 2025

Dated: May 15, 2025

By: _____

David W. Carickhoff, solely in his
capacity as Chapter 7 Trustee of RAC
Investment Holdings, LLC, *et al.*

By _____

Name:
Title:    Amy Bartels

Staff Manager - Finance

6