IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RAC INVESTMENT HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10316 (BLS)<br>(Jointly Administered)<br><br>**Hearing Date: January 21, 2026 at 9:30 am. (ET)**<br>**Objection Deadline: December 30, 2025 at 4:00 p.m. (ET)** |

**CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER
APPROVING SETTLEMENTS OF CHAPTER 5 CAUSES
OF ACTION PURSUANT TO FED. R. BANKR. P. 9019**

David W. Carickhoff, the Chapter 7 Trustee (the "Trustee") for the jointly administered bankruptcy estates of the above-captioned debtors (collectively, the "Debtors") hereby moves this Court for entry of an Order, substantially in the form annexed hereto (the "Proposed Order"), approving the Trustee's settlement of Chapter 5 causes of action with Auto Zone Inc. ("Auto Zone") and Title Technologies, Inc. ("Title Technologies"), pursuant to Fed. Rule of Bankr. P. 9019(a), and in support thereof, states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, where applicable are: RAC Investment Holdings, LLC (7349); RAC King, LLC (6605); RAC Dealership, LLC (3862); RAC Intermediate Holdings, LLC (4792); RAC Servicer, LLC (3735); and RAC Asset Holdings, LLC (8701).

231383220 v2

3. The basis for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On March 14, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with this Court under chapter 7 of the Bankruptcy Code, thereby commencing these chapter 7 bankruptcy cases (the "Chapter 7 Cases").

5. On March 14, 2023, the Trustee was appointed as chapter 7 trustee of the Chapter 7 Cases pursuant to section 701(a) of the Bankruptcy Code. The section 341(a) meeting of creditors was held and concluded.

6. On March 17, 2023, the Court entered an order providing for the joint administration of the Chapter 7 Cases for procedural purposes only, with Case No. 23-10316 (BLS) (RAC Investment Holdings, LLC, *et al.*) designated as the lead case [D.I. 13].

7. Prior to the Petition Date, the RAC Dealership, LLC ("RAC Dealership") operated the Debtors' vehicle dealership business under the name "American Car Center" (the "Dealership Business"). At its peak, the Dealership Business maintained 68 dealerships located in 10 states in the southeastern United States. The Debtors reduced the number of active dealerships and were operating 45 dealerships prior to ceasing business in February of 2023.

8. In accordance with his duties under the Bankruptcy Code, the Trustee reviewed each of the Debtors' financial books and records and identified several entities who received potentially avoidable transfers during the ninety-day period prior to the Petition Date (the "Preference Period"). The Trustee then contacted recipients of the potentially avoidable transfers and requested that they provide information, defenses and supporting documents regarding the transfers.

9. For those recipients of transfers with whom the Trustee was unable to reach resolution, the Trustee either entered into tolling stipulations agreeing to toll and extend the applicable time periods and statutes of limitations to commence an avoidance action or commenced adversary proceedings by filing complaints, pursuant to sections 502(d), 547, 548, and 550 of the Bankruptcy Code, seeking to avoid and recover the avoidable transfers and disallow claims of the recipients of those transfers.

10. On April 9, 2025, the Court entered the *Order Establishing Procedures Governing Associated Adversary Proceedings Brought Pursuant to 11 U.S.C. §§ 502, 547, 548 and 550* [D.I. 360] (the "Settlement Procedures Order"). Approval of the Trustee's avoidance action claims in these Chapter 7 Cases, including the settlement discussed below, are governed by the Settlement Procedures Order.

## THE SETTLEMENT AGREEMENTS[2]

### A. The Auto Zone Settlement

11. After reviewing the Debtors' books and records, the Trustee determined that RAC Dealership made transfers of $1,582,073.75 to Auto Zone during the Preference Period (the "Auto Zone Transfers"). The Auto Zone Transfers paid approximately 9,680 in invoices during the Preference Period. The Trustee subsequently sent a letter to Auto Zone requesting information on any potential defenses it may have to avoidance of the Auto Zone Transfers.

12. On March 13, 2025, the Trustee commenced Adversary Proceeding No. 25-50404 (BLS) (the "Auto Zone Adversary Proceeding") against Auto Zone seeking to avoid and recover the Auto Zone Transfers. After commencing the Auto Zone Adversary Proceeding, the parties

---

[2] The terms of each settlement agreement summarized in this Motion in no way alter, change, or amend the actual terms set forth in the applicable settlement agreement with each of the settling parties. In the event that there are any inconsistencies between this summary and the actual terms of any settlement agreement, the language set forth in that settlement agreement shall control.

3

agreed to proceed with mediation and Mr. Raymond Lemisch was appointed as mediator. The parties then prepared and submitted extensive mediation statements detailing their positions and attended a mediation session before the mediator on October 10, 2025.

13. As part of its defense, Auto Zone asserted that it provided approximately $1,046,267 in subsequent new value, reducing preference exposure to approximately $535,000. In addition to its subsequent new value defense, Auto Zone analyzed thousands of transactions with RAC Dealership prior to the Preference Period, prepared an ordinary course of business analysis, and asserted that all the Auto Zone Transfers fell within the subjective ordinary course of business defense. After an all-day mediation session, the parties reached a preliminary settlement, which, given the voluminous transaction history between the Debtors and Auto Zone, was subject to further review of Auto Zone's documents and analysis by the Trustee.

14. After the Trustee's addition review and analysis, the parties finalized the settlement in accordance with the terms and conditions set forth in the settlement agreement attached to the Proposed Order as **Exhibit A** (the "Auto Zone Settlement Agreement"). Pursuant to the Auto Zone Settlement Agreement, Auto Zone agreed to pay $120,000 to the RAC Dealership estate and waive its claims under section 502(h) of the Bankruptcy Code in satisfaction of the Trustee's claims to avoid and recover the Auto Zone Transfers.

B.    Title Technologies Settlement

15. The Trustee determined that certain of the Debtors made approximately $366,880,27 in transfers to Title Technologies that may be avoided and recovered by the Trustee on behalf of the Debtors' estates (the "Title Technologies Transfers"). The Trustee subsequently sent a letter to Title Technologies requesting information on any potential defenses it may have to avoidance of the Title Technologies Transfers.

16. On March 13, 2025, the Trustee commenced Adversary Proceeding No. 25-50430 (BLS) (the "Title Technologies Adversary Proceeding") against Title Technologies seeking to avoid and recover the Transfers. After commencing the Title Technologies Adversary Proceeding, the parties entered into discussions and exchanged information on Title Technologies' defenses to avoidance and recovery of the Title Technologies Transfers.

17. Title Technologies provided the Trustee with information in support of its defenses, including that it was a mere conduit, the Title Technologies Transfers were made in the ordinary course of business, and it provided contemporaneous new value to the Debtors in exchange for the Transfers. According to documents provided by Title Technologies, it retained approximately $20,000 in fees from the Title Technologies Transfers and the remaining funds were disbursed to various state licensing departments. After reviewing Title Technologies' documents and information and analyzing its defenses, the parties agreed to resolve the Trustee's claims in exchange for Title Technologies' cash payment of $10,000 and its release and waiver of claims arising under sections 502(h) of the Bankruptcy Code. The terms of the Title Technologies settlement were incorporated into a settlement agreement executed by the parties and attached to the Proposed Order as **Exhibit B**.

## RELIEF REQUESTED

18. By this Motion, the Trustee seeks approval, pursuant to Bankruptcy Rule 9019, of the each of the settlement agreements entered into with Auto Zone and Title Technologies (together, the Settling Parties"), copies of which are annexed as Exhibits 1 and 2 to the Proposed Order (together, the "Settlement Agreements").

19. Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a); *see*

*also Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996). Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Id*. at 395.

20. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id*. at 393. In striking this balance, the Court should consider the following four factors: "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." *Id*. *See also In Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (explaining that, in determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

21. It is well-established that a settlement proponent need not convince the court that the settlement is the best possible compromise, but only that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 77-78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the Martin factors, courts should not have a mini-trial on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." (citations and internal quotation marks omitted)).

22. A review of the four *Martin* factors demonstrates that the settlement with the Settling Parties should be approved. The Trustee and his professionals invested significant time

231383220 v2

and effort in analyzing the Transfers and considered the defenses asserted and information provided by the Settling Parties. Based on the foregoing considerations, and the facts set forth herein, the Trustee respectfully submits that the Settlement Agreements represent a fair and reasonable compromise that is in the best interest of the Debtors' estates. As a result of the settlements, the Debtors' estates will recover $130,000 for the benefit of the Debtors' estates and the Settling Parties will waive their section 502(h) claims.

23. The Trustee respectfully submits that the settlements are fair, reasonable, and in the best interest of the Debtors' estates and creditors, especially in light of the defenses raised by the Settling Parties as set forth above.

24. The Trustee likewise believes the settlements are founded on the exercise of sound business judgment by the Trustee. Approval of the settlements will allow for resolution of the Trustee's claims without the need for additional litigation, associated discovery, pre-trial motion practice, and possibly trials, thus conserving judicial resources, and avoiding the costs, risks and delays that would be incurred were the Trustee to continue his pursuit of the avoidance and recovery of the Transfers. Finally, the Settlement Agreements were the product of arms' length negotiation between the parties, after they engaged in an informal, good faith exchange of documents and information during settlement negotiations, which occurred over the course of several months. Accordingly, the Settlement Agreements should be approved.

## **NOTICE**

25. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Debtors' pre-petition secured lenders, (c) all parties that have requested notice pursuant to Bankruptcy Rule 2002, and (d) the Settling Parties, by

counsel. Such notice is reasonable in light of the circumstances of these Chapter 7 Cases and the nature of the relief sought herein.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the attached Order granting the Motion, approving the Settlement Agreements, and granting such other and further relief as is just and equitable.

Dated: December 9, 2025

**ARCHER & GREINER, P.C.**

*/s/ Natasha M. Songonuga*
Natasha M. Songonuga (Bar No. 5391)
300 Delaware Avenue, Suite 1100
Wilmington, DE 19801
Tel: (302) 777-4350
Fax: (302) 777-4352
E-mail: nsongonuga@archerlaw.com

-and-

Gerard DiConza
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 682-4940
Email: gdiconza@archerlaw.com

*Attorneys for the Chapter 7 Trustee*