**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RAC INVESTMENT HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10316 (BLS)<br>(Jointly Administered)<br><br>**Hearing Date: April 8, 2026 at 2:00 pm (ET)**<br>**Objection Deadline: March 25, 2026 at 4:00 p.m. (ET)** |

**CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER
APPROVING SETTLEMENTS OF CHAPTER 5 CAUSES
OF ACTION PURSUANT TO FED. R. BANKR. P. 9019**

David W. Carickhoff, the Chapter 7 Trustee (the "Trustee") for the jointly administered bankruptcy estates of the above-captioned debtors (collectively, the "Debtors") hereby moves this Court for entry of an Order, substantially in the form annexed hereto (the "Proposed Order"), approving the Trustee's settlement of Chapter 5 causes of action described below, pursuant to Fed. Rule of Bankr. P. 9019(a), and in support thereof, states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, where applicable are: RAC Investment Holdings, LLC (7349); RAC King, LLC (6605); RAC Dealership, LLC (3862); RAC Intermediate Holdings, LLC (4792); RAC Servicer, LLC (3735); and RAC Asset Holdings, LLC (8701).

231790300 v1

3. The basis for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On March 14, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with this Court under chapter 7 of the Bankruptcy Code, thereby commencing these chapter 7 bankruptcy cases (the "Chapter 7 Cases").

5. On March 14, 2023, the Trustee was appointed as chapter 7 trustee of the Chapter 7 Cases pursuant to section 701(a) of the Bankruptcy Code. The section 341(a) meeting of creditors was held and concluded.

6. On March 17, 2023, the Court entered an order providing for the joint administration of the Chapter 7 Cases for procedural purposes only, with Case No. 23-10316 (BLS) (RAC Investment Holdings, LLC, *et al.*) designated as the lead case [D.I. 13].

7. Prior to the Petition Date, the RAC Dealership, LLC ("RAC Dealership") operated the Debtors' vehicle dealership business under the name "American Car Center" (the "Dealership Business"). At its peak, the Dealership Business maintained 68 dealerships located in 10 states in the southeastern United States. The Debtors reduced the number of active dealerships and were operating 45 dealerships prior to ceasing business in February of 2023.

8. In accordance with his duties under the Bankruptcy Code, the Trustee reviewed each of the Debtors' financial books and records and identified several entities who received potentially avoidable transfers during the ninety-day period prior to the Petition Date (the "Preference Period"). The Trustee then contacted recipients of the potentially avoidable transfers and requested that they provide information, defenses and supporting documents regarding the transfers.

231790300 v1

9. For those recipients of transfers with whom the Trustee was unable to reach resolution, the Trustee either entered into tolling stipulations agreeing to toll and extend the applicable time periods and statutes of limitations to commence an avoidance action or commenced adversary proceedings by filing complaints, pursuant to sections 502(d), 547, 548, and 550 of the Bankruptcy Code, seeking to avoid and recover the avoidable transfers and disallow claims of the recipients of those transfers.

10. On April 9, 2025, the Court entered the *Order Establishing Procedures Governing Associated Adversary Proceedings Brought Pursuant to 11 U.S.C. §§ 502, 547, 548 and 550* [D.I. 360] (the "Settlement Procedures Order"). Approval of the Trustee's avoidance action claims in these Chapter 7 Cases, including the settlement discussed below, are governed by the Settlement Procedures Order.

## THE SETTLEMENT AGREEMENTS

11. The Trustee has recently reached a settlement with three defendants to avoidance action adversary proceedings: (a) Alliant Insurance Services Inc. ("Alliant"), (b) Harmelin and Associates Inc. ("Harmelin"), and (c) Primeritus Financial Services a/k/a Consolidated Asset Recovery Systems, Inc. ("Primeritus"). Each settlement is in accordance with the terms described below and the settlement agreements attached as exhibits hereto.[2]

A. The Alliant Settlement

12. After reviewing the Debtors' books and records, the Trustee determined that RAC Dealership made transfers of $275,166.11 to Alliant during the Preference Period (the "Alliant Transfers").

---

[2] The terms of each settlement agreement summarized in this Motion in no way alter, change, or amend the actual terms set forth in the applicable settlement agreement with each of the settling parties. In the event that there are any inconsistencies between this summary and the actual terms of any settlement agreement, the language set forth in that settlement agreement shall control.

231790300 v1

13. The Trustee subsequently sent a letter to Alliant requesting information on any potential defenses it may have to avoidance of the Alliant Transfers, and on March 13, 2025, the Trustee commenced Adversary Proceeding No. 25-50403 (BLS) (the "Alliant Adversary Proceeding") seeking to avoid and recover the Alliant Transfers. After commencing the Alliant Adversary Proceeding, the parties entered into discussions and exchanged information regarding Alliant's defenses to avoidance and recovery of the Alliant Transfers. Alliant asserted that it was a mere conduit for all of the transfers except for approximately $18,000. In addition to its conduit defense, Alliant asserted that all transfers were made in the ordinary course and that new value was provided after the transfers were made.

14. The Trustee and his advisors reviewed Alliant's defenses and, after arms-length and good faith negotiations, the parties agreed to settle the Alliant Adversary Proceeding in exchange for Alliant's payment of $12,500 and waiver of claims under section 502(h) of the Bankruptcy Code. The terms of the settlement are set forth in the Alliant settlement agreement attached hereto as **Exhibit 1** (the "Alliant Settlement Agreement").

B. The Harmelin Settlement

15. The Trustee determined that the Debtors made approximately $527,696.60 in transfers to Harmelin that may be avoided and recovered by the Trustee on behalf of the Debtors' estates (the "Harmelin Transfers"). The Trustee subsequently sent a letter to Harmelin requesting information on any potential defenses it may have to avoidance of the Harmelin Transfers. The parties thereafter entered into a tolling agreement and informal discussions regarding Harmelin's defenses avoidance and recovery of the transfers. Harmelin is an advertising agency that provided the Debtors with media planning and other marketing services.

16. Unable to reach a resolution, on August 29, 2025, the Trustee commenced Adversary Proceeding No. 25-52215 (BLS) (the "Harmelin Adversary Proceeding") seeking to avoid and recover the Harmelin Transfers. After commencing the Harmelin Adversary Proceeding, the parties continued their discussions and exchange of information. Through the informal discussions, Harmelin provided the Trustee with information in support of its defenses, including that it was a mere conduit, the Harmelin Transfers were made in the ordinary course of business, and it provided subsequent new value to the Debtors in exchange for the Harmelin Transfers. According to the information provided by Harmelin, it continued to provide the Debtors with advertising services throughout the Preference Period. After review of Harmelin's subsequent new value defense, total preference exposure was reduced to approximately $125,000.

17. After analysis of the Harmelin defenses and continued arms-length and good faith discussions, the parties agreed to resolve the Harmelin Adversary Proceeding in exchange for Harmelin's cash payment of $50,000 and its release and waiver of claims arising under section 502(h) of the Bankruptcy Code. The terms of the Harmelin settlement are incorporated into a settlement agreement executed by the parties and attached hereto as **Exhibit 2**.

C. The Primeritus Settlement

18. After reviewing the Debtors' books and records, the Trustee determined that RAC Dealership made transfers of $296,273.64 to Primeritus during the Preference Period (the "Primeritus Transfers"). The Trustee subsequently sent a letter to Primeritus requesting information on any potential defenses it may have to avoidance of the Primeritus Transfers. The parties thereafter entered into a tolling agreement and informal discussions regarding Primeritus' defenses avoidance and recovery of the transfers.

19. After several months of discussions and unable to resolve their disputes, the Trustee commenced Adversary Proceeding No. 25-52436 (BLS) on November 26, 2025 (the "Primeritus Adversary Proceeding") seeking to avoid and recover the Primeritus Transfers. After commencing the Primeritus Adversary Proceeding, the parties continued their good-faith discussions and exchanged information regarding Primeritus' defenses to avoidance and recovery of the Primeritus Transfers. Primeritus asserted that it provided subsequent new value after each transfer and its preference exposure was minimal. After reviewing the information provided by Primeritus, the Trustee and his professionals determined that Primeritus' preference exposure was reduced to an amount between $60,000 and $92,000.

20. After analysis of the Primeritus defenses and continued arms-length and good faith discussions, the parties agreed to resolve the Trustee's claims in exchange for Primeritus' cash payment of $40,000 and its release and waiver of claims arising under section 502(h) of the Bankruptcy Code. The terms of the Primeritus settlement are incorporated into a settlement agreement executed by the parties and attached hereto as **Exhibit 3**.

## RELIEF REQUESTED

21. By this Motion, the Trustee seeks approval, pursuant to Bankruptcy Rule 9019, of the each of the settlement agreements entered into with Alliant, Harmelin and Primeritus (collectively, the Settling Parties"), copies of which are annexed hereto (collectively, the "Settlement Agreements").

22. Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019(a); *see also Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996). Courts generally defer to a

trustee's business judgment when there is a legitimate business justification for the trustee's decision.  *Id*. at 395.

23.     In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *Id*. at 393.  In striking this balance, the Court should consider the following four factors: "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors."  *Id*.  *See also In Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (explaining that, in determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

24.     It is well-established that a settlement proponent need not convince the court that the settlement is the best possible compromise, but only that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."  *In re Nutritional Sourcing Corp*., 398 B.R. 816, 833 (Bankr. D. Del. 2008); *see also In re W.R. Grace & Co*., 475 B.R. 34, 77-78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the Martin factors, courts should not have a mini-trial on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." (citations and internal quotation marks omitted)).

25.     A review of the four *Martin* factors demonstrates that the settlement with the Settling Parties should be approved.  The Trustee and his professionals invested significant time and effort in analyzing the Transfers and considered the defenses asserted and information

7

provided by the Settling Parties. Based on the foregoing considerations, and the facts set forth herein, the Trustee respectfully submits that the Settlement Agreements represent a fair and reasonable compromise that is in the best interest of the Debtors' estates. Each of the Settling Parties asserted several defenses to the Trustee's claims and the settlements represent a fair and reasonable compromise of the claims while avoiding the risks and costs of litigation. As a result of the settlements, the Debtors' estates will recover $102,500 for the benefit of the Debtors' estates and the Settling Parties will waive their section 502(h) claims against the Debtors.

26. The Trustee respectfully submits that the settlements are fair, reasonable, and in the best interest of the Debtors' estates and creditors, especially in light of the defenses raised by the Settling Parties as set forth above.

27. The Trustee likewise believes the settlements are founded on the exercise of sound business judgment by the Trustee. Approval of the settlements will allow for resolution of the Trustee's claims without the need for additional litigation, associated discovery, pre-trial motion practice, and possibly trials, thus conserving judicial resources, and avoiding the costs, risks and delays that would be incurred were the Trustee to continue his pursuit of the avoidance and recovery of the Transfers. Finally, the Settlement Agreements were the product of arms' length negotiation between the parties, after they engaged in an informal, good faith exchange of documents and information during settlement negotiations, which occurred over the course of several months. Accordingly, the Settlement Agreements should be approved.

## **NOTICE**

28. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Debtors' pre-petition secured lenders, (c) all parties that have requested notice pursuant to Bankruptcy Rule 2002, and (d) the Settling Parties, by

counsel. Such notice is reasonable in light of the circumstances of these Chapter 7 Cases and the nature of the relief sought herein.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the attached Order granting the Motion, approving the Settlement Agreements, and granting such other and further relief as is just and equitable.

| | |
|---|---|
| Dated: March 4, 2026 | **ARCHER & GREINER, P.C.**<br><br>*/s/ Natasha M. Songonuga*<br>Natasha M. Songonuga (Bar No. 5391)<br>300 Delaware Avenue, Suite 1100<br>Wilmington, DE 19801<br>Tel: (302) 777-4350<br>Fax: (302) 777-4352<br>E-mail: nsongonuga@archerlaw.com<br><br>-and-<br><br>Gerard DiConza<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Tel: (212) 682-4940<br>Email: gdiconza@archerlaw.com<br><br>*Attorneys for the Chapter 7 Trustee* |

231790300 v1